UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 N. Main Avenue<br>Tucson, AZ 85701,<br><br>Plaintiff,<br><br>v.<br><br>DAVID BERNHARDT,<br>Secretary of the<br>U.S. Department of the Interior,<br>1849 C Street, N.W.<br>Washington, DC 20240,<br><br>and,<br><br>AURELIA SKIPWITH,<br>Director, U.S. Fish and Wildlife Service,<br>1849 C Street, N.W.<br>Washington, DC 20240,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: _____<br><br>**COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      The Trump administration has listed only 21 species as endangered or threatened under the Endangered Species Act, 16 U.S.C. §§ 1531–1544 ("ESA" or "Act"). This is the fewest listings produced by any administration at this point in their term.

2.      This case challenges the ongoing failure of David Bernhardt, the Secretary of the U.S. Department of the Interior ("Secretary") and Aurelia Skipwith, the Director of the U.S. Fish and Wildlife Service ("Service")—the federal agency principally responsible for administering the ESA—to timely list imperiled species as endangered or threatened pursuant to the ESA and to designate "critical habitat" for these species. These failures delay protection for species, result

in further species declines, increase risk of extinction, and make recovery more difficult and expensive. At least 47 species have gone extinct while waiting for protection since the Act was passed in late 1973.

3.      The Service currently faces a backlog of more than 500 species waiting for decisions about their protection, all of which exceed the statutory deadlines of the ESA. Indeed, many of these species have been waiting more than a decade for listing decisions required by the ESA to be completed within 12 months.

4.      Not only do these delays in listing decisions and critical habitat designations violate the ESA's statutory deadlines, but the Service has also consistently failed to adhere to its own National Listing Workplan ("Workplan"), which was purported to be Defendants' plan for eliminating the backlog. Under the Trump administration, the Service has continued to consistently fail to make the findings required in the Workplan. The Service failed to make findings for 30 such species in fiscal year 2017, 78 species in fiscal year 2018, and 46 species in fiscal year 2019.

5.      Therefore, Plaintiff Center for Biological Diversity ("Center"), an environmental conservation organization that works to protect native wildlife species and their habitats, brings this action under the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(1)(C), to challenge Defendants' failure to adhere to the Act's statutory deadlines. Specifically, the Center challenges Defendants' failure to: (1) make statutorily required 12-month findings on petitions to list 231 species as endangered or threatened under the ESA, *id.* § 1533(b)(3)(B); (2) publish final listing determinations for six species, *id.* § 1533(b)(6)(A); and (3) finalize critical habitat for four species, *id.* § 1533(a)(3)(A)(i), (b)(6)(A)(ii)(I), (b)(6)(C).

6.     To remedy Defendants' violations of the ESA, the Center requests an order declaring that Defendants are in violation of the ESA and its mandatory deadlines as outlined above and ordering Defendants to publish the overdue actions according to enforceable deadlines. *Id.* § 1540(g)(1).

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) and (g)(1)(C) (action arising under ESA citizen suit provision), 5 U.S.C. § 702 (review of agency action under the Administrative Procedure Act ("APA")), and 28 U.S.C. § 1331 (federal question jurisdiction).

8.     The Court may grant the relief requested under the ESA, 16 U.S.C. § 1540(g), the APA, 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief).

9.     Plaintiff provided sixty days' notice of Plaintiff's intent to file this suit pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C), by letter to Defendants dated November 20, 2019. Defendants have not remedied their continuing ESA violations by the date of this Complaint's filing.

10.     Venue is proper in the United States District Court for the District of Columbia pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because Defendants reside in the district and a substantial part of the events giving rise to the Center's claims occurred in this district.

## PARTIES

11.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a nonprofit organization that works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction. The Center is incorporated in California and

headquartered in Tucson, Arizona, with field offices throughout the United States and Mexico.

The Center has 74,504 members. The Center and its members are concerned with, and have

concrete interests in, the conservation of imperiled species, including the ones at issue in this

suit, and with the effective implementation of the ESA.

12.     The Center's members include individuals with professional, aesthetic, spiritual,

and/or recreational interests in the species at issue in this suit and are similarly interested in the

health of these species' habitat.

13.     The Center's and its members' interests in these species and their habitats are

dependent upon the persistence of healthy and sustainable populations of—and ultimately the

recovery of—those species in the wild. Yet unless these species are promptly protected under the

ESA, they will continue to decline and may even go extinct; indeed, since the ESA was enacted

in 1973, at least 47 species have gone extinct while awaiting protection, while very few species

have gone extinct once protected under the ESA. Since the ESA was enacted only four species

have been confirmed extinct following listing. Even if imperiled species do not go extinct while

awaiting ESA protection, their continued deterioration significantly reduces the potential for

their recovery and therefore Defendants' unlawful delays in listing and critical habitat

designation harms the Center's and its members' concrete interests in the species.

14.     In view of these concerns, the Center and other interested persons have submitted

formal petitions to the Service to extend the substantive protections of the ESA to the species at

issue by listing them as "endangered" or "threatened." Since its founding, the Center has

petitioned the Service to list numerous species, many of which have been listed as either

endangered or threatened species under the Act. For instance, of the 241 species at issue in this

suit, the Center originally petitioned for 180 of them. The Service's ongoing and systemic failure

to respond to the Center's petitions within the time frames required by the ESA necessitates that the Center spend additional resources seeking to protect these species and directly undermines the Center's ability to carry out its central mission to prevent the extinction, and further the recovery, of imperiled species.

15.     Defendants' failure to comply with their nondiscretionary duties under the ESA deprives the species at issue in this Complaint of statutory protections that are vital to their survival and recovery. As a result of Defendants' unlawful delays, the Center's and its members' interests in these species are being, and will continue to be, impaired.

16.     Therefore, the Center and its members are injured by Defendants' failure to make timely listing decisions and critical habitat designations with regard to the species at issue because Defendants' failure to timely act prevents the substantive safeguards of the ESA to come into play to benefit these species. These are actual, concrete, and ongoing injuries that are presently suffered by the Center and its members, are directly caused by Defendants' acts and omissions, and will continue to occur unless the Court grants relief. The relief sought herein would redress these injuries by expediting the time periods within which the species at issue will receive necessary protections under the ESA and by requiring that Defendants respond to listing petitions within the time frames mandated by the Act.

17.     Defendant DAVID BERNHARDT is the Secretary of the Department of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including listing decisions and critical habitat designations. Secretary Bernhardt is sued in his official capacity.

18.     Defendant AURELIA SKIPWITH is the Director of the U.S. Fish and Wildlife

Service, the agency within the Department of the Interior that is charged with implementing the

ESA for the species at issue in this suit, including through prompt compliance with the ESA's

mandatory listing and critical habitat deadlines. The Secretary has delegated administration of

the ESA to the Service. 50 C.F.R. § 402.01(b). Director Skipwith is sued in her official capacity.

## STATUTORY FRAMEWORK

19.     The ESA is a comprehensive federal statute declaring that endangered and

threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific

value to the Nation and its people." 16 U.S.C. § 1531(a)(3). The purpose of the ESA is to

"provide a means whereby the ecosystems upon which endangered species and threatened

species depend may be conserved, [and] to provide a program for the conservation of such

endangered species and threatened species." *Id*. § 1531(b).

20.     When enacting the ESA, Congress declared that "all Federal departments and

agencies shall seek to conserve endangered species and threatened species and shall utilize their

authorities in furtherance of the purposes of this Act." *Id.* § 1531(c)(1). Congress further

specifically mandated that the Secretary "review other programs administered by him and utilize

such programs in furtherance of the purposes of this Act." *Id.* § 1536(a)(1).

21.     The ESA has a suite of substantive legal protections that apply to "species," *id*. §

1532(16) (defining "species"), once they are listed as endangered or threatened. For example,

ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize

the continued existence" of any endangered or threatened species or "result in the destruction or

adverse modification" of any listed species' "critical habitat." *Id*. § 1536(a)(2). ESA section 9

prohibits, among other actions, "any person" from "taking" protected animals without lawful

authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539. Other provisions require the Service

to designate "critical habitat" for listed species, *id.* § 1533(a)(3); require the Service to "develop

and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire

land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal

funds available to states in order to assist in the conservation of endangered and threatened

species, *id.* § 1535(d).

**A. Listing Species as Endangered or Threatened Under the ESA**

22.     ESA section 4 requires that the Service list species as "endangered" or

"threatened" if one or more of five listing factors is met—such as the present or threatened

destruction of habitat—based on the best available science. *Id.* § 1533(a)(1), (b)(1)(A). "The

term 'endangered species' means any species which is in danger of extinction throughout all or a

significant portion of its range[,]" *id.* § 1532(6), while "[t]he term 'threatened species' means

any species which is likely to become an endangered species within the foreseeable future

throughout all or a significant portion of its range." *Id.* § 1532(20).

23.     To ensure that listing decisions are timely, ESA section 4 sets forth a detailed

process and timetable whereby interested persons may petition the Service to list a species as

endangered or threatened. This process includes nondiscretionary deadlines that require the

Service to make up to three decisions in response to listing petitions within prescribed time

frames. These three findings, described below, are the 90-day finding, the 12-month finding, and

the final listing determination.

24.     Within 90 days of receipt of a listing petition, the Service must, "to the maximum

extent practicable," make an initial finding as to whether the petition "presents substantial

scientific or commercial information indicating that the petitioned action may be warranted." *Id.*

§ 1533(b)(3)(A). If the Service determines in this "90-day finding" that the petition does not

present substantial information indicating that listing may be warranted, the petition is denied

and the process concludes.

25.     If, on the other hand, the Service determines that a petition *does* present

substantial information indicating that listing "may be warranted," the agency must publish that

finding and proceed with a scientific review of the species' status, which is known as a "status

review." *Id.* All of the species at issue in this case have received such "positive" 90-day findings.

26.     Upon completion of the status review, and within one year from the date that it

receives the petition, the Service must make a "12-month finding" with one of three

determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is

"warranted but precluded" by other pending proposals for listing species, provided certain

circumstances are present. *Id.* § 1533(b)(3)(B).

27.     If in the 12-month finding the Service concludes that listing is warranted, the

agency must publish notice in the Federal Register of a proposed regulation to list the species as

endangered or threatened and take public comment on the proposed listing determination. *Id.* §

1533(b)(3)(B)(ii).

28.     Within one year of publication of the proposed listing rule, the Service must

publish in the Federal Register the "final listing determination." *Id.* § 1533(b)(6)(A).

29.     If the Service finds that there is substantial disagreement regarding the sufficiency

or accuracy of the available data relevant to the determination or revision, the Service may

extend this one-year period by six months to solicit additional data. *Id.* § 1533(b)(6)(B)(i).

However, before the expiration of that six-month extension, the Service must publish in the

Federal Register either a final regulation to implement the determination or a withdrawal of the regulation along with a finding on which the withdrawal is based. *Id.* § 1533(b)(6)(B)(ii)–(iii).

30.     If in the 12-month finding the Service concludes that listing is not warranted, then the petition process is concluded. *Id.* § 1533(b)(3)(B)(i). This finding is then subject to judicial review. *Id.* § 1533(b)(3)(C)(ii).

31.     If in the 12-month finding the Service determines that a petition to list a species is "warranted but precluded" by other "pending proposals to determine whether any species" is endangered or threatened, the petition must, under the Act, "be treated as a petition that is resubmitted to the [Service] . . . on the date of such finding." *Id*. § 1533(b)(3)(C)(i). Hence, the Act requires the Service to make a new determination within one year as to whether the species should be listed or instead may again be denied the Act's protections on the grounds that its listing is "precluded" by other pending listing actions. *Id*. The Service commonly refers to new findings on previously filed petitions as "recycled petition findings," and they are included in a "Candidate Notice of Review" ("CNOR"), a document that, prior to the current administration, the Service published approximately every 12 months. The ESA provides that any warranted but precluded finding must be based on findings that the petitioned action is "precluded" by other pending listing proposals and that "expeditious progress is being made to add species" to the lists of endangered and threatened species." *Id.* Any such determination is subject to judicial review. *Id*. § 1533(b)(3)(C)(ii).

32.     CNORs list all species that the Service considers to be "candidates" for listing. Candidates are species for which the Service has "on file sufficient information on biological vulnerability and threats to support a proposal for listing as endangered or threatened, but for which preparation and publication of a proposal is precluded by higher-priority listing actions."

84 Fed. Reg. 54,732 (Oct. 10, 2019). Although the Service acknowledges that listing all "candidates" is "warranted" based on the best available data—i.e., such species need the protections of the Act to avoid near or long-term extinction—candidates that are not listed receive none of the extensive safeguards of the Act.

### B. Critical Habitat Designations

33.     With limited exceptions, the Service is required to designate "critical habitat" at the time of an imperiled species' listing as endangered or threatened. *Id.* § 1533(a)(3)(A). Thus, the Service must, "to the maximum extent prudent and determinable," designate critical habitat for a species "concurrently with making a determination" that it is endangered or threatened," *id.* § 1533(a)(3)(A)(i), and within one year of proposing critical habitat. *Id.* § 1533(b)(6)(A)(ii), (b)(6)(C)(ii).

34.     In requiring the designation of critical habitat at the time of listing the species, the ESA aims to ensure that all species at risk of extinction receive these essential habitat protections in a timely manner. *Id.* § 1533(a)(3)(A), (b)(6)(A)(ii), (b)(6)(C); *see also id.* § 1531(b) (statutory directive to "provide a means whereby the ecosystems upon which endangered . . . and threatened species depend may be conserved").

35.     Designation of critical habitat is "not determinable" only when "[d]ata sufficient to perform required analyses are lacking, or . . . [t]he biological needs of the species are not sufficiently well known to identify any area that meets the definition of 'critical habitat.'" 50 C.F.R. § 424.12(a)(2). If critical habitat is "not . . . determinable" at the time of listing, the Service may extend the deadline to designate critical habitat by "no more than one additional year," by which point it must publish a final regulation "based on such data as may be available at the time." 16 U.S.C. § 1533(b)(6)(C)(ii).

36.     Under recently promulgated regulations, designating critical habitat is considered "not prudent" only when: (1) "[t]he species is threatened by taking or other human activity and identification of critical habitat can be expected to increase the degree of such threat to the species;" (2) "[t]he present or threatened destruction, modification, or curtailment of a species' habitat or range is not a threat to the species, or threats to the species' habitat stem solely from causes that cannot be addressed through management actions resulting from consultations under section 7(a)(2) of the Act;" (3) "[a]reas within the jurisdiction of the United States provide no more than negligible conservation value, if any, for a species occurring primarily outside the jurisdiction of the United States;" (4) "[n]o areas meet the definition of critical habitat;" or (5) "[t]he Secretary otherwise determines that designation of critical habitat would not be prudent based on the best scientific data available." 50 C.F.R. § 424.12(a)(1).[1]

37.     The Service must make critical habitat designations based on "the best scientific data available." 16 U.S.C. § 1533(b)(2).

38.     If the Service finds that designating critical habitat is "not prudent" or "not determinable," it must "state the reasons for not designating critical habitat in the publication of proposed and final rules listing a species." 50 C.F.R. § 424.12(a).

39.     Critical habitat is defined to include specific areas that are known to be occupied by the species, with the "[p]hysical or biological features" that are "essential to the conservation of the species" and which "may require special management considerations or protection," as well as specific areas unoccupied by the species that "are essential for the conservation of the species." 16 U.S.C. § 1532(5)(A). In turn, "conservation" means "the use of all methods and

---

[1] The legality of these newly promulgated regulations has been challenged in the Northern District of California. *See Center for Biological Diversity v. Bernhardt*, No. 3:19-cv-05206 (N.D. Cal.).

procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the Act] are no longer necessary." *Id.* § 1532(3). Accordingly, critical habitat includes areas that require proper management to ensure a listed species not only survives, but also recovers from the extinction risk.

40.     Protecting a species' critical habitat is crucial for the protection and recovery of many listed species, especially those that are endangered or threatened because of historical and ongoing habitat loss or degradation. In particular, section 7(a)(2) of the ESA requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of their "critical habitat." *Id.* § 1536(a)(2).

## OVERVIEW OF THE SERVICE'S EFFORTS TO LIST AND PROTECT SPECIES UNDER THE ESA

41.     The ESA's purpose of conserving endangered and threatened species is undermined by lengthy bureaucratic delays and political interference in the listing process and designations of critical habitat.

42.     Between 1974 and 2014, it took the Service more than 12 years on average to complete the listing processes for a single species even though the process is supposed to take only two years under the ESA's mandatory deadlines.

43.     Since the passage of the Act, at least 47 species have gone extinct while awaiting protection. Many more imperiled species continue to decline while Defendants drag their feet, failing to make the requisite listing decisions and critical habitat designations, making recovery more tenuous and expensive.

44.     Most listing determinations made by the Service in response to listing petitions, such as those submitted by the Center, have come only following litigation. After an audit of the

Service's listing program in 1990, the Interior Department's inspector general concluded that the Service was not making sufficient progress in reducing a backlog of over 3,000 species awaiting protection. In response, conservation groups brought litigation that culminated in settlements requiring the Service to making listing determinations for hundreds of candidate species. *See Fund for Animals v. Lujan*, Civ. No. 92-800 (D.D.C. Dec. 15, 1992) (Settlement Agreement); *Cal. Native Plant Soc'y v. Lujan*, Civ. No. 91-0038 (E.D. Cal. Aug. 22, 1991) (Settlement Agreement); *Conservation Council for Hawaii v. Lujan*, Civ. No. 89-953 (D. Haw. May 9, 1990) (Settlement Agreement). This, in turn, led to a marked rise in annual final listing determinations that extended through the mid-1990s.

45. Following the implementation of a series of administrative policies that Defendants adopted between the late-1990s to 2000, listings have come to be almost entirely driven by petitions and litigation. Between 2000 and 2009, during the George W. Bush administration, only 62 species received final listing determinations despite a candidate backlog of over 250 species.

46. Litigation filed by the Center and others in this Court in 2010 resulted in two settlement agreements requiring the Service to make listing determinations for over 250 candidate species. *See* Order Granting Joint Motion for Approval of Settlement Agreement and Order of Dismissal of Center for Biological Diversity's Claims, *In Re: Endangered Species Act Section 4 Deadline Litigation*, No. 1:10-mc-00377-EGS, MDL No. 2165 (D.D.C. Sept. 9, 2011) (ECF No. 56); Order Granting Joint Motion for Approval of Settlement Agreement and Order of Dismissal of WildEarth Guardians' Claims (ECF No. 55) (together "the Listing Settlement").

47. Nearing the completion of the Listing Settlement, in 2016 the Service announced the Workplan, a schedule for publishing over 200 overdue findings that were among the

Service's "highest priorities," including 12-month findings and final listing determinations that were not addressed by the Listing Settlement.

48.     This Workplan was informed by a scientific prioritization process and included input from stakeholders including the state fish and game agencies. The Trump administration, however, has consistently failed to make the findings required in the Workplan. The Service failed to make findings for 30 such species in fiscal year 2017, 78 species in fiscal year 2018, and 46 species in fiscal year 2019. Overall, the Trump administration has listed just 21 species for an average of only 7 species per year. By comparison, the Obama administration listed 360 species for a rate of 45 species per year and the Clinton administration listed 523 species for a rate of 65 species per year.

49.     The Service recently updated its Workplan in May 2019 setting forth the Service's priorities for fiscal years 2020 through 2023. Regrettably, based on this administration's failure to adhere to the Service's own Workplan, it is all but inevitable that the Service will fail to complete many of the actions set forth in the Workplan. In any case, all of the species-specific decisions and designations at issue in this Complaint are already overdue under the ESA's nondiscretionary statutory deadlines.

## FACTUAL BACKGROUND

## I.  231 OVERDUE 12-MONTH FINDINGS

### A.  36 Species from a Petition to List 475 Species in the Southwest United States

50.     On June 25, 2007, the Service received a petition requesting that the Service list 475 species in the Service's Southwest Region as endangered or threatened and to concurrently designate critical habitat for those species. *See* 90-Day Finding on Petitions to List Nine Species of Mussels from Texas as Threatened or Endangered with Critical Habitat, 74 Fed. Reg. 66,260,

66,262 (Dec. 15, 2009); Partial 90-Day Finding on a Petition to List 475 Species in the

Southwestern United States as Threatened or Endangered with Critical Habitat, 74 Fed. Reg.

66,866, 66867 (Dec. 16, 2009).

51.     On December 15, 2009, over two years after the petition was originally submitted,

the Service made positive 90-findings for two of those species: the Texas heelsplitter (*Potamilus amphichaenus*) and the Salina mucket (*Potamilus metnecktayi*). 74 Fed. Reg. at 66,261.

52.     On December 16, 2009, the Service made positive 90-day findings for 68 of those

species, finding that the petition presented substantial scientific or commercial information

indicating that listing may be warranted. 74 Fed. Reg. at 66,866. Those species included the:

notodontid moth (*Astylis sp. 1*); big red sage (*Salvia pentstemonoides*); Blanco blind salamander

(*Eurycea robusta*); brush pea (*Genistidium dumosum*); bushy whitlow-wort (*Paronychia congesta*); Chihuahua catfish (*Ictalurus sp.*); Chisos coralroot (*Hexalectris revoluta*); Cisco

milkvetch (*Astragalus sabulosus*); Comal Springs salamander (*Eurycea sp. 8*); Delaware County

cave crayfish (*Cambarus subterraneus*); Edwards Aquifer diving beetle (*Haideoporus texanus*);

Ferris's copper (*lycaena ferrisi*); glowing Indian paintbrush (*Castilleja ornata*); Heterocampa sp.

1 nr. Amanda (*Heterocampa sp. 1 nr. Amanda*); Kiamachi crayfish (*Orconectes saxatilis*);

Litodonta sp. 1 nr. Alpina (*Litodonta sp. 1 nr. Alpina*); Louisiana pigtoe (*Pleurobema riddellii*);

mimic cavesnail (*Phreatodrobia imitata*); Navasota False Foxglove (*Agalinis navasotensis*);

Oklahoma cave crayfish (*Cambarus tartarus*); Pecos pupfish (*Cyprinodon pecosensis*); Pinaleno

talussnail (*Sonorella grahamensis*); prostrate milkweed (*Asclepias prostrata*); Quitobaquito

tryonia (*Tryonia quitobaquitae*); San Xavier talussnail (*Sonorella eremita*); Sangre de Cristo

peaclam (*Pisidium sanguinichristi*); Texas salamander (*Eurycea neotenes*); Texas troglobitic

water slater (*Lirceolus smithii*); Tharp's bluestar (*Amsonia tharpii*); toothless blindcat

(*Trogloglanis pattersoni*); Wet Canyon talussnail (*Sonorella macrophallus*); White Sands pupfish (*Cyprinodon tularosa*); widemouth blindcat (*Satan eurystomus*); and the Peppered chub (a.k.a. Arkansas River Speckled Chub) (*Macrhybopsis tetranema*).

53.     These positive 90-day findings triggered a requirement that the Service commence status reviews and make 12-month findings within a year of receiving the listing petition—i.e., by June 25, 2008. This deadline had expired by the time the Service published the positive 90-day findings on December 15 & 16, 2009.

54.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make required 12-month findings for these 36 species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make these 12-month findings.

55.     Until Defendants act and make these 12-month findings and issue final listing determinations, these 36 species will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

### B. Three Species from a Petition to List 206 Species in the Midwest and Western United States as Threatened or Endangered with Critical Habitat

56.     On July 30, 2007, the Service received a petition requesting that the Service list 206 species in the Service's mountain-prairie region of the United States as endangered or threatened and to concurrently designate critical habitat for those species. Partial 90-Day Finding on a Petition to List 206 Species in the Midwest and Western United States as Threatened or Endangered with Critical Habitat, 74 Fed. Reg. 41,649, 41,650 (Aug. 18, 2009).

57.     On August 8, 2009, over two years after the petition was originally submitted, the Service made positive 90-findings for 29 of those species, finding that the petition presented

substantial scientific or commercial information indicating that listing may be warranted. *Id.*

Those species included: Brandegee's wild buckwheat (*Eriogonum brandegeei*); Isley's

milkvetch (*Astragalus iselyi*); and North Park bugseed (a.k.a. Boat-shaped bugseed)

(*Corispermum navicula*).

58.     The positive 90-day findings triggered a requirement that the Service commence

status reviews and make 12-month findings within a year of receiving the listing petition—i.e.,

by July 30, 2008. This deadline had expired by the time the Service published the positive 90-

day findings on August 8, 2009.

59.     By letter dated November 20, 2019, the Center notified Defendants that they have

violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make required 12-month

findings for these three species. The Center advised Defendants that the Center intended to file

suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make

these 12-month findings.

60.     Until Defendants act and make these 12-month findings and issue final listing

determinations, these three species will continue to decline toward extinction. There is no legal

excuse for Defendants' failure to act.

### C. 12 Species from a Petition to List 32 Species and Subspecies of Snails and Slugs in the Pacific Northwest as Threatened or Endangered with Critical Habitat

61.     On March 17, 2008, the Service received a petition from the Center and other

interested persons requesting that the Service list 32 species and subspecies of snails and slugs

(mollusks) in the Pacific Northwest as endangered or threatened and to concurrently designate

critical habitat for those species. 90-Day Finding on a Petition to List 29 Mollusks Species as

Threatened or Endangered with Critical Habitat, 76 Fed. Reg. 61,826, 61,827 (Oct. 5, 2011).

62.     On October 5, 2011, over three years after the petition was originally submitted, the Service made positive 90-findings for 26 of those species, finding that the petition presented substantial scientific or commercial information indicating that listing may be warranted. *Id.* at 61,826. Those species included: Big Bar hesperian (*Vespericola pressleyi*); Burrington (keeled) jumping-slug (*Hemphillia burringtoni*); Chelan mountainsnail (*Oreohelix n. sp*); Columbia Oregonian snail (*Cryptomastix hendersoni*); Dalles sideband (*Monadenia fidelis minor*); evening fieldslug (*Deroceras hesperium*); Hoko vertigo (*Vertigo n sp.1*); Puget Oregonian snail (*Cryptomastix devia*); Shasta chaparral (*Trilobopsis roperi*); Shasta hesperian (*Vespericola shasta*); Shasta sideband (*Monadenia troglodytes troglodytes*); and Wintu sideband (*Monadenia troglodytes ssp. Wintu*).

63.     The positive 90-day findings triggered a requirement that the Service commence status reviews and make 12-month findings within a year of receiving the listing petition—i.e., by March 17, 2009. This deadline had expired by the time the Service published the positive 90-day findings on October 5, 2011.

64.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make required 12-month findings for these 12 species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make these 12-month findings.

65.     Until Defendants act and make these 12-month findings and issue final listing determinations, these 12 species will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

### D. **Two Species from a Petition to List Six Species as Threatened or Endangered with Critical Habitat**

66.     On October 15, 2008, the Service received a petition requesting that the Service list a number of species of freshwater mussels as threatened or endangered. 90-Day Finding on Petitions to List Nine Species of Mussels from Texas as Threatened or Endangered with Critical Habitat, 74 Fed. Reg. 66,260, 66,262 (Dec. 15, 2009).

67.     On December 15, 2009, over a year after the petition was originally submitted, the Service made positive 90-findings for, amongst others, the Mexican fawnsfoot (*Truncilla cognata*) and the false spike (*Fusconaia mitchelli*), finding that the petition presented substantial scientific or commercial information indicating that listing may be warranted. *Id.* at 66,261.

68.     The positive 90-day findings triggered a requirement that the Service commence status reviews and make 12-month finding within a year of receiving the listing petition—i.e., by October 15, 2009. This deadline had expired by the time the Service published the positive 90-day findings on December 15, 2009.

69.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month findings for these two species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make these 12-month findings.

70.     Until Defendants act and make these 12-month findings and issues final listing determinations, these two species will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**E.  21 Species from a Petition to List 42 Species of Great Basin Springsnails as Threatened or Endangered with Critical Habitat**

71.    On February 27, 2009, the Service received a petition from the Center and other interested persons requesting that the Service list 42 species of Great Basin Springsnails in Nevada, Utah, and California as endangered or threatened and to concurrently designate critical habitat for those species. 90-Day Finding on a Petition to List 29 Mollusks Species as Threatened or Endangered with Critical Habitat, 76 Fed. Reg. 56,608, 56,609 (Sept. 13, 2011).

72.    On September 13, 2011, over two years after the petition was originally submitted, the Service made a positive 90-finding for 32 of those species, finding that the petition presented substantial scientific or commercial information indicating that listing may be warranted. *Id.* at 61,826. Those species included: Amargosa tryonia (*Tryonia variegata*); Ash Meadows pebblesnail (*Pyrgulopsis erythropoma*); Crystal springsnail (*Pyrgulopsis crystalis*); distal-gland springsnail (*Pyrgulopsis nanus*); elongate-gland springsnail (*Pyrgulopsis isolata*); Fairbanks springsnail   (*Pyrgulopsis fairbanksensis*); flat-topped Steptoe pyrg (*Pyrgulopsis planulata*); Hamlin Valley pyrg (*Pyrgulopsis hamlinensis*); Landyes pyrg (*Pyrgulopsis landyei*); longitudinal gland pyrg (*Pyrgulopsis anguina*); median-gland Nevada springsnail (*Pyrgulopsis pisteri*); minute tryonia (*Tryonia ericae*); neritiform Steptoe Ranch pyrg (*Pyrgulopsis neritella*); northern Steptoe pyrg (*Pyrgulopsis serrata*); Point of Rocks tryonia (*Tryonia elata*); Southeast Nevada pyrg (*Pyrgulopsis turbatrix*); southern Steptoe pyrg (*Pyrgulopsis sulcata*); sportinggoods tryonia (*Tryonia angulate*); Sterile Basin pyrg (*Pyrgulopsis sterilis*); sub-globose snake pyrg (*Pyrgulopsis saxatilis*); and sub-globose Steptoe Ranch pyrg (*Pyrgulopsis orbiculata*).

73.    The positive 90-day findings triggered a requirement that the Service commence status reviews and make 12-month findings within a year of receiving the listing petition—i.e.,

by February 27, 2010. This deadline had expired by the time the Service published the positive 90-day findings on September 13, 2011.

74.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make required 12-month findings for these 21 species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make these 12-month findings.

75.    Until Defendants act and make these 12-month findings and issue final listing determinations, these 21 species will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

### F.    Petition to List the Texas Kangaroo Rat as Threatened or Endangered with Critical Habitat

76.    On January 15, 2010, the Service received a petition requesting that the Service list the Texas kangaroo rat as threatened or endangered with critical habitat. 90-Day Finding on a Petition to List the Texas Kangaroo Rat as Endangered or Threatened, 76 Fed. Reg. 12,683 12,684 (Mar. 8, 2011).

77.    On March 8, 2011, over a year after the petition was originally submitted, the Service made a positive 90-finding for the Texas kangaroo rat (*Dipodomys elator*), finding that the petition presented substantial scientific or commercial information indicating that listing may be warranted. *Id.* at 12,638.

78.    The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by January 15, 2011. This deadline had expired by the time the Service published the positive 90-day findings on March 8, 2011.

79.     By letter dated November 20, 2019, the Center notified Defendants that they have

violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-

month finding for the Texas kangaroo rat (*Dipodomys elator*). The Center advised Defendants

that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date,

Defendants have failed to make this 12-month finding.

80.     Until Defendants act and make this 12-month finding and issue a final listing

determination, the Texas kangaroo rat (*Dipodomys elator*) will continue to decline toward

extinction. There is no legal excuse for Defendants' failure to act.

### G. Petition to List the Spot-tailed Earless Lizard as Threatened or Endangered with Critical Habitat

81.     On January 21, 2010, the Service received a petition requesting that the Service

list the spot-tailed earless lizard as threatened or endangered with critical habitat. 90-Day Finding

on a Petition to List the Spot-Tailed Earless Lizard as Endangered or Threatened, 76 Fed. Reg.

30,082, 30,083 (May 24, 2011).

82.     On May 24, 2011, over a year after the petition was originally submitted, the

Service made a positive 90-finding for the spot-tailed earless lizard (*Holbrookia lacerata*),

finding that the petition presented substantial scientific or commercial information indicating that

listing may be warranted. *Id.* at 30,082.

83.     The positive 90-day finding triggered a requirement that the Service commence a

status review and make a 12-month finding within a year of receiving the listing petition—i.e.,

by January 21, 2011. This deadline had expired by the time the Service published the positive

90-day findings on March 8, 2011.

84.     By letter dated November 20, 2019, the Center notified Defendants that they have

violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-

month finding for the spot-tailed earless lizard (*Holbrookia lacerata*). The Center advised

Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines.

To date, Defendants have failed to make this 12-month finding.

85.     Until Defendants act and make this 12-month finding and issue a final listing

determination, the spot-tailed earless lizard (*Holbrookia lacerata*) will continue to decline

toward extinction. There is no legal excuse for Defendants' failure to act.

**H.  Petition to List the Golden-Winged Warbler as Threatened or Endangered**

86.     On February 10, 2010, the Service received a petition requesting that the Service

list the golden-winged warbler as threatened or endangered. 90-Day Finding on a Petition to List

the Golden-Winged Warbler as Endangered or Threatened, 76 Fed. Reg. 31,920, 31,921 (June 2,

2011).

87.     On June 2, 2011, over a year after the petition was originally submitted, the

Service made a positive 90-finding for the golden-winged warbler (*Vermivora chrysoptera*),

finding that the petition presented substantial scientific or commercial information indicating that

listing may be warranted. *Id.* at 31,920.

88.     The positive 90-day finding triggered a requirement that the Service commence a

status review and make a 12-month finding within a year of receiving the listing petition—i.e.,

by February 10, 2011. This deadline had expired by the time the Service published the positive

90-day findings on June 2, 2011.

89.     By letter dated November 20, 2019, the Center notified Defendants that they have

violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-

month finding for the golden-winged warbler (*Vermivora chrysoptera*). The Center advised

Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

90.     Until Defendants act and make this 12-month finding and issue a final listing determination, the golden-winged warbler (*Vermivora chrysoptera*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

## I.   111 Species from a Petition to List 404 Species from the Southeastern United States as Threatened or Endangered with Critical Habitat

91.     On April 20, 2010, the Service received a petition from the Center and other interested persons requesting that the Service list 404 aquatic, riparian, and wetland species from the southeastern United States as endangered or threatened species and to concurrently designate critical habitat for those species. Partial 90-Day Finding on a Petition to List 404 Species in the Southeastern United States as Threatened or Endangered with Critical Habitat, 76 Fed. Reg. 59,836, 59,837 (Sept. 27, 2011).

92.     On September 27, 2011, over a years after the petition was originally submitted, the Service made a positive 90-finding for 374 of those species, finding that the petition presented substantial scientific or commercial information indicating that listing may be warranted. *Id.* at 61,826. Those species included: Alabama hickorynut (*Obovaria unicolor*); Apalachicola wild indigo (*Baptisia megacarpa*); Avernus cave beetle (*Pseudanophthalmus avernus*); Black Creek crayfish (*Procambarus pictus*); Blueridge springfly (*Remenus kirchneri*); bluestripe darter (*Percina cymatotaenia*); bog spicebush (*Lindera subcoriacea*); Brawleys Fork crayfish (*Cambarus williami*); Caddo madtom (*Noturus taylori*); Cannulate cave isopod (*Caecidotea cannula*); Chesapeake logperch (*Percina bimaculate*); Chowanoke crayfish (*Orconectes virginiensis*); coal darter (Percina brevicauda); peppered shiner (*Notropis perpallidus*); Cooper's Cave amphipod (*Stygobromus cooperi*); Crested Riverlet crayfish

(*Hobbseus cristatus*); Crossroads cave beetle (*Pseudanophthalmus intersectus*); Cudjo's
(Cumberland Gap) Cave beetle (*Pseudanophthalmus hirsutus*); Cumberland moccasinshell
(*Medionidus conradicus*); Doll's daisy (*Boltonia montana*); Dry Fork Valley cave beetle
(*Pseudanophthalmus montanus*); Dukes' skipper (*Euphyes dukesi calhouni*); Edison's ascyrum
(*Hypericum edisonianum*); Georgia blind salamander (*Haideotriton wallacei*); green floater
(*Lasmigona subviridis*); Hall's bulrush (*Schoenoplectus hallii*); Hubbard's cave beetle
(*Pseudanophthalmus hubbardi*); Hubricht's cave beetle (*Pseudanophthalmus hubrichti*); Jackson
prairie crayfish (*Procambarus barbiger*); Kentucky creekshell (*Villosa ortmanni*); Little
Kennedy cave beetle (*Pseudanophthalmus cordicollis*); lobed roachfly (*Tallaperla lobata*);
longnose darter (*Percina nasuta*); lowland loosestrife (*Lythrum flagellare*); Maiden Spring cave
beetle (*Pseudanophthalmus virginicus*); Mammoth Spring crayfish (*Orconectes marchandi*);
meadow joint-vetch (*Aeschynomene pratensis*); Miami cave crayfish (*Procambarus milleri*);
Minute Cave amphipod (*Stygobromus parvus*); Morrison's Cave amphipod (*Stygobromus
morrisoni*); Narrows Cave (New River Valley Cave) beetle (*Pseudanophthalmus egberti*);
yellow pond-lily (*Nuphar lutea ssp. sagittifolia*); Natural Bridge cave beetle
(*Pseudanophthalmus pontis*); northern cavefish (*Amblyopsis spelaea*); northern red-bellied
cooter (*Pseudemys rubriventris*); Ocmulgee skullcap (*Scutellaria ocmulgee*); orangefin madtom
(*Noturus gilberti*); overlooked cave beetle (*Pseudanophthalmus praetermissus*); Ozark shiner
(*Notropis ozarcanus*); Palatka skipper (*Euphyes pilatka klotsi*); paleback darter (*Etheostoma
pallididorsum*); piebald madtom (*Noturus gladiator*); pink pigtoe (*Pleurobema rubrum*); popeye
shiner (*Notropis ariommus*); Pristine crayfish (*Cambarus pristinus*); round hickorynut (*Obovaria
subrotunda*); Rye Cove Cave isopod (*Lirceus culveri*); Saint Paul cave beetle
(*Pseudanophthalmus sanctipauli*); salamander mussel (*Simpsonaias ambigua*); Shenandoah cave

beetle (*Pseudanophthalmus limicola*); silken cave beetle (*Pseudanophthalmus sericus*);

smallscale darter (*Etheostoma microlepidum*); South Branch Valley cave beetle

(*Pseudanophthalmus potomaca*); southern elktoe (*Alasmidonta triangulata*); speckled burrowing

crayfish (*Fallicambarus danielae*); spider elimia (*Elimia arachnoidea*); spiny scale crayfish

(*Cambarus jezerinaci*); spinytail crayfish (*Procambarus fitzpatricki*); streamside salamander

(*Ambystoma barbouri*); Tennessee Cave salamander (*Gyrinophilus palleucus*); Tennessee

clubshell (*Pleurobema oviforme*); Tennessee heelsplitter (*Lasmigona holstonia*); Tennessee

pigtoe (*Pleuronaia barnesiana*); Texas screwstem (*Bartonia texana*); Thomas' cave beetle

(*Pseudanophthalmus thomasi*); Tidewater amphipod (*Stygobromus indentatus*); Tombigbee

Riverlet crayfish (*Hobbseus petilus*); Virginia stone (*Acroneuria kosztarabi*); water stitchwort

(*Stellaria fontinalis*); West Virginia spring salamander (*Gyrinophilus subterraneus*); western

chicken turtle  (*Deirochelys reticularia miaria*); western fanshell (*Cyprogenia aberti*);

Yalobusha Riverlet crayfish (*Hobbseus yalobushensis*); Yazoo crayfish (*Orconectes hartfieldi*);

Georgia bully (swamp buckhorn) (*Sideroxylon thornei*); hairy-peduncled beaked-rush

(*Rhynchospora crinipes*); Pine Island rice rat or Marsh Rice Rat (*Oryzomys palustris*

*planirostris*); rayed creekshell (*Anodontoides radiatus*); Bigcheek cave crayfish (*Procambarus*

*delicatus*); ciliate-leaf tickseed (*Coreopsis integrifolia*); Coastal Lowland cave crayfish

(*Procambarus leitheuseri*); Correll's false dragonhead (*Physostegia correllii*); domed ancylid

(*Rhodacme elatior*); Florida pondweed (*Potamogeton floridanus*); Godfrey's stitchwort

(*Minuartia godfreyi*); Harper's fimbristylis (*Fimbristylis perpusilla*); Florida hartwrightia

(*Hartwrightia floridana*); karst snowfly (*Allocapnia cunninghami*); Logan's Agarodes caddisfly

(*Agarodes logani*); Raven's seedbox (*Ludwigia ravenii*); Santa Fe cave crayfish (*Procambarus*

*erythrops*); Sevier snowfly (*Allocapnia brooksi*); slenderwrist burrowing crayfish

(*Fallicambarus petilicarpus*); southern snaketail (*Ophiogomphus australis*); sun-facing

coneflower (*Rudbeckia heliopsidis*); Sykora's Hydroptila caddisfly (*Hydroptila sykorai*);

Tallapoosa orb (*Quadrula asperata archeri*); Tennessee forestfly (*Amphinemura mockfordi*);

thin-wall quillwort (*Isoetes microvela*); three-tooth long-horned caddisfly (*Triaenodes tridontus*);

and the yellow-sided clubtail (*Stylurus potulentus*).

93.     These positive 90-day findings triggered a requirement that the Service

commence status reviews and make 12-month findings within a year of receiving the listing

petition—i.e., by April 20, 2011. This deadline had expired by the time the Service published the

positive 90-day findings on September 27, 2011.

94.     By letter dated November 20, 2019, the Center notified Defendants that they have

violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make required 12-month

findings for these 111 species. The Center advised Defendants that the Center intended to file

suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make

these 12-month findings.

95.     Until Defendants act and make these 12-month findings and issue final listing

determinations, these 111 species will continue to decline toward extinction. There is no legal

excuse for Defendants' failure to act.

**J.   Petition to List the Saltmarsh Topminnow as Threatened or Endangered**

96.     On September 7, 2010, the Service received a petition requesting that the Service

list the saltmarsh topminnow (*Fundulus jenkinsi*) as threatened or endangered under the ESA.

90-Day Finding on a Petition to List the Saltmarsh Topminnow as Threatened or Endangered

under the Endangered Species Act, 76 Fed. Reg. 49,412 (Aug. 10, 2011).

97.    On August 10, 2011, the Service made a positive 90-finding for the saltmarsh topminnow (*Fundulus jenkinsi*), finding that the petition presented substantial scientific or commercial information indicating that listing may be warranted. *Id.*

98.    The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the revised listing petition—i.e., by September 7, 2011.

99.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the saltmarsh topminnow (*Fundulus jenkinsi*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

100.    Until Defendants act and make this 12-month finding and issue a final listing determination, the saltmarsh topminnow (*Fundulus jenkinsi*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**K. Petition to List the Desert Massasauga as Threatened or Endangered**

101.    On November 1, 2010, the Service received a petition requesting that the Service list the desert massasauga (*Sistrurus catenatus edwardsii*) as threatened or endangered. 90-Day Finding on a Petition to List Desert Massasauga as Endangered or Threatened and To Designate Critical Habitat, 77 Fed. Reg. 47,583, 47,584 (Aug. 9, 2012).

102.    On August 9, 2012, over a year after the petition was originally submitted, the Service made a positive 90-finding for the desert massasauga (*Sistrurus catenatus edwardsii*), finding that the petition presented substantial scientific or commercial information indicating that listing may be warranted. *Id.* at 47,583.

103.    The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by November 1, 2011. This deadline had expired by the time the Service published the positive 90-day findings on August 9, 2012.

104.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the desert massasauga (*Sistrurus catenatus edwardsii*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

105.    Until Defendants act and make this 12-month finding and issue a final listing determination, the desert massasauga (*Sistrurus catenatus edwardsii*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**L.  Petition to List the Rocky Mountain Monkeyflower as Endangered or Threatened with Critical Habitat**

106.    On October 4, 2011, the Service received a petition requesting that the Service list the Rocky Mountain monkeyflower (*Mimulus gemmiparus*) as threatened or endangered and to concurrently designate critical habitat. 90-Day Finding on a Petition to List Mimulus gemmiparus (Rocky Mountain Monkeyflower) as Endangered or Threatened and To Designate Critical Habitat, 77 Fed. Reg. 52,293, 52,294 (Aug. 29, 2012).

107.    On August 29, 2012, the Service made a positive 90-finding for the Rocky Mountain monkeyflower (*Mimulus gemmiparus*), finding that the petition presented substantial scientific or commercial information indicating that listing may be warranted. *Id.* at 52,293.

108.    The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by October 4, 2012.

109.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the Rocky Mountain monkeyflower (*Mimulus gemmiparus*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

110.    Until Defendants act and make this 12-month finding and issue a final listing determination, the Rocky Mountain monkeyflower (*Mimulus gemmiparus*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**M. Petition to List Two Spring Mountains Dark Blue Butterflies as Endangered or Threatened with Critical Habitat**

111.    On October 6, 2011, the Service received a petition requesting that the Service list the two Spring Mountains dark blue butterflies (*Euphilotes ancilla purpura* and *Euphilotes ancilla cryptica*) as threatened or endangered and to concurrently designate critical habitat for those species. 90-Day Finding on Petitions to List the Two Spring Mountains Dark Blue Butterflies and Morand's Checkerspot Butterfly as Endangered or Threatened, 77 Fed. Reg. 47,003, 47,004 (Aug. 7, 2012).

112.    On August 7, 2012, the Service made a positive 90-finding for the Spring Mountains dark blue butterflies (*Euphilotes ancilla purpura* and *Euphilotes ancilla cryptica*), finding that the petition presented substantial scientific or commercial information indicating that listing may be warranted. *Id.* at 47,003.

113.    The positive 90-day finding triggered a requirement that the Service commence

status reviews and make 12-month findings within a year of receiving the listing petition—i.e.,

by October 6, 2012.

114.    By letter dated November 20, 2019, the Center notified Defendants that they have

violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-

month findings for these two species. The Center advised Defendants that the Center intended to

file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to

make these 12-month findings.

115.    Until Defendants act and make these 12-month findings and issue final listing

determinations, these two species will continue to decline toward extinction. There is no legal

excuse for Defendants' failure to act.

**N.   Petition to List the Southern White-Tailed Ptarmigan and the Mt. Rainier White-
        Tailed Ptarmigan as Threatened with Critical Habitat**

116.    On August 24, 2010, the Service received a petition from the Center and other

interested persons requesting that the Service list the either the U.S. population or the Rocky

Mountains population of white-tailed ptarmigan as threatened and to designate critical habitat.

90-Day Finding on a Petition to List the Southern White-Tailed Ptarmigan and the Mt. Rainier

White-Tailed Ptarmigan as Threatened with Critical Habitat, 77 Fed. Reg. 33,143, 31,144 (June

5, 2012). On October 12, 2011, the petition was revised to request listing of the southern white-

tailed ptarmigan and the Mt. Rainier white-tailed ptarmigan as threatened. *Id.* at 33,145.

117.    On June 5, 2012, the Service made a positive 90-finding for the southern white-

tailed ptarmigan (*Lagopus leucura altipetens*) and the Mt. Rainier white-tailed ptarmigan (*L. l.

rainierensis*), finding that the petition presented substantial scientific or commercial information

indicating that listing may be warranted. *Id.* at 33,143.

31

118.     The positive 90-day finding triggered a requirement that the Service commence status reviews and make 12-month findings within a year of receiving the revised listing petition—i.e., by October 12, 2012.

119.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month findings for these two subspecies. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make these 12-month findings.

120.     Until Defendants act and make these 12-month findings and issue final listing determinations, these two subspecies will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**O.  Petition to List the Plains Spotted Skunk as Endangered or Threatened**

121.     On January 23, 2012, the Service received a revised petition requesting that the Service list the plains spotted skunk (a.k.a. eastern spotted skunk) (*Spilogale putorius interrupta*) as endangered or threatened. 90-Day Finding on a Petition to List the Prairie Gray Fox, the Plains Spotted Skunk, and a Distinct Population Segment of the Mearn's Eastern Cottontail in East-Central Illinois and Western Indiana as Endangered or Threatened Species, 77 Fed. Reg. 71,759, 71,760 (December 4, 2012).

122.     On December 4, 2012, the Service made a positive 90-finding for the plains spotted skunk (*Spilogale putorius interrupta*), finding that the petition presented substantial scientific or commercial information indicating that listing may be warranted. *Id.* at 71,759.

123.    The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the revised listing petition—i.e., by January 23, 2013.

124.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the plains spotted skunk (*Spilogale putorius interrupta*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

125.    Until Defendants act and make this 12-month finding and issue a final listing determination, the plains spotted skunk (*Spilogale putorius interrupta*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**P.  21 Species from a Petition to List 53 Amphibian and Reptile Species in the United States as Threatened or Endangered with Critical Habitat**

126.    On July 11, 2012, the Service received a petition from the Center and other interested persons requesting that the Service list 53 amphibians and reptiles in the United States as endangered or threatened species and to concurrently designate critical habitat for those species. 90-Day Findings on 10 Petitions, 80 Fed. Reg. 19,259, 19,262 (Apr. 10, 2015) (western pond turtle); 90-Day Findings on 31 Petitions, 80 Fed. Reg. 37,568, 37,571–37,578 (July 1, 2015) (Arizona toad, Blanding's turtle, Cascade Caverns salamander, Cascades frog, Illinois chorus frog, Kern Canyon slender salamander, Key Ring-necked snake, relictual slender salamander, Rim Rock crowned snake, Rio Grande cooter, spotted turtle); 90-Day Findings on 25 Petitions, 80 Fed. Reg. 56,423, 56,426–56,430 (Sept. 18, 2015) (Cascade torrent salamander, Columbia torrent salamander, Florida pine snake, Kern Plateau salamander, limestone salamander, southern rubber boa, short-tailed snake).

127.     On April 10, July 1, and September 18, 2015, between two and three years after

the petition was originally submitted, the Service made positive 90-findings for at least 21 of

those species, finding that the petition presented substantial scientific or commercial information

indicating that listing may be warranted. *Id.* at 61,826. Those species included: Arizona toad

(*Anaxyrus microscaphus*); Blanding's turtle (*Emydoidea blandingii*); Cascade Caverns

salamander (*Eurycea latitans*); Cascade torrent salamander (*Rhyacotriton cascadae*); Cascades

frog (*Rana cascadae*); Columbia torrent salamander (*Rhyacotriton kezeri*); Florida pine snake

(*Pituophis melanoleucus mugitus*); Illinois chorus frog (*Pseudacris illinoensis*); Kern Canyon

slender salamander (*Batrachoseps simatus*); Kern Plateau salamander (*Batrachoseps robustus*);

Key Ringneck snake (*Diadophis punctatus acricus*); limestone salamander (*Hydromantes*

*brunus*); relictual slender salamander (*Batrachoseps relictus*); Rim Rock crowned snake

(*Tantilla oolitica*); Rio Grande cooter (*Pseudemys gorzugi*); short-tailed snake (*Stilosoma*

*extenuatum*); southern rubber boa (*Charina umbratica*); spotted turtle (*Clemmys guttata*);

western pond turtle (*Actinemys marmorata*); western spadefoot toad (*Spea hammondii*); and the

wood turtle (*Glyptemys insculpta*).

128.     These positive 90-day findings triggered a requirement that the Service

commence status reviews and make 12-month findings within a year of receiving the listing

petition—i.e., by July 11, 2013. This deadline had expired by the time the Service published the

positive 90-day findings on April 10, 2015, July 1, 2015, and September 18, 2015.

129.     By letter dated November 20, 2019, the Center notified Defendants that they have

violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make required 12-month

findings for these 21 species. The Center advised Defendants that the Center intended to file suit

to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make these 12-month findings.

130.     Until Defendants act and make these 12-month findings and issue final listing determinations, these 21 species will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

## Q. Petition to List the Northern Spotted Owl as an Endangered Species

131.     On August 21, 2012, the Service received a petition requesting that the Service list the northern spotted owl (*Strix occidentalis caurina*) as endangered under the ESA. 90-Day Findings on 10 Petitions, 80 Fed. Reg. 19,259, 19,262 (Apr. 10, 2015).

132.     On April 10, 2015, over two years after the petition was originally submitted, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the northern spotted owl (*Strix occidentalis caurina*) as endangered may be warranted. *Id.* at 19,262.

133.     The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by August 21, 2013. This deadline had expired by the time the Service published the positive 90-day findings on April 10, 2015.

134.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the northern spotted owl (*Strix occidentalis caurina*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

135.     Until Defendants act and make this 12-month finding and issue a final listing determination, the northern spotted owl (*Strix occidentalis caurina*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**R.  Petition to List the Regal Fritillary as an Endangered or Threatened Species**

136.     On April 24, 2013, the Service received a petition requesting that the Service list the Regal fritillary (*Speyeria idalia*) as endangered or threatened under the ESA. 90-Day Findings on 25 Petitions, 80 Fed. Reg. 56,423, 56,429 (Sept. 18, 2015).

137.     On September 18, 2015, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the Regal fritillary (*Speyeria idalia*) as endangered or threatened may be warranted. *Id.* at 56,429.

138.     The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by April 24, 2014. This deadline had expired by the time the Service published the positive 90-day findings on September 18, 2015.

139.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the Regal fritillary (*Speyeria idalia*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

140.     Until Defendants act and make this 12-month finding and issue a final listing determination, the Regal fritillary (*Speyeria idalia*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**S.  Petition to List the Great Basin Silverspot as an Endangered or Threatened Species**

141.    On April 24, 2013, the Service received a petition requesting that the Service list the Great Basin silverspot (*Speyeria nokomis nokomis*) as endangered or threatened under the ESA. 90-Day Findings on 17 Petitions, 81 Fed. Reg. 1,368, 1,371 (Jan. 12, 2016).

142.    On January 12, 2016, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the Great Basin silverspot (*Speyeria nokomis nokomis*) as endangered or threatened may be warranted. *Id.* at 1,371.

143.    The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by April 24, 2014. This deadline had expired by the time the Service published the positive 90-day findings on September 18, 2015.

144.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the Great Basin silverspot (*Speyeria nokomis nokomis*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

145.    Until Defendants act and make this 12-month finding and issue a final listing determination, the Great Basin silverspot (*Speyeria nokomis nokomis*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**T.  Petition to List the Contiguous U.S. Distinct Population Segment of the Tufted Puffin as an Endangered or Threatened Species with Critical Habitat**

146.    On February 14, 2014, the Service received a petition requesting that the Service list the contiguous U.S. distinct population segment of the tufted puffin (*Fratercula cirrhata*) as

endangered or threatened under the ESA and to concurrently designate critical habitat. 90-Day Findings on 25 Petitions, 80 Fed. Reg. 56,423, 56,431 (Sept. 18, 2015).

147.    On September 18, 2015, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the contiguous U.S. distinct population segment of the tufted puffin (*Fratercula cirrhata*) as endangered or threatened may be warranted. *Id.*

148.    The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by February 14, 2015. This deadline had expired by the time the Service published the positive 90-day findings on September 18, 2015.

149.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the contiguous U.S. distinct population segment of the tufted puffin (*Fratercula cirrhata*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

150.    Until Defendants act and make this 12-month finding and issue a final listing determination, the contiguous U.S. distinct population segment of the tufted puffin (*Fratercula cirrhata*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**U. Petition to List the Silvery Phacelia as an Endangered or Threatened Species with Critical Habitat**

151.    On March 7, 2014, the Service received a petition from the Center and other interested persons requesting that the Service list the silvery phacelia (*Phacelia argentea*) as

endangered or threatened under the ESA and to concurrently designate critical habitat. 90-Day

Findings on 31 Petitions, 80 Fed. Reg. 37,568, 37,577–78 (July 1, 2015).

152.    On July 1, 2015, the Service made a positive 90-finding that the petition presented

substantial scientific or commercial information indicating that listing the silvery phacelia

(*Phacelia argentea*) as endangered or threatened may be warranted. *Id.*

153.    The positive 90-day finding triggered a requirement that the Service commence a

status review and make a 12-month finding within a year of receiving the listing petition—i.e.,

by March 7, 2015. This deadline had expired by the time the Service published the positive 90-

day findings on July 1, 2015.

154.    By letter dated November 20, 2019, the Center notified Defendants that they have

violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-

month finding for the silvery phacelia (*Phacelia argentea*). The Center advised Defendants that

the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date,

Defendants have failed to make this 12-month finding.

155.    Until Defendants act and make this 12-month finding and issue a final listing

determination, the silvery phacelia (*Phacelia argentea*) will continue to decline toward

extinction. There is no legal excuse for Defendants' failure to act.

**V.  Petition to List the Clear Lake Hitch as an Endangered or Threatened Species**

156.    On September 25, 2014, the Service received a petition from the Center and other

interested persons requesting that the Service list the Clear Lake hitch (*Lavinia exilicauda chi*) as

endangered or threatened under the ESA. 90-Day Findings on 10 Petitions, 80 Fed. Reg. 19,259,

19,260 (Apr. 10, 2015).

157.    On April 10, 2015, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the Clear Lake hitch (*Lavinia exilicauda chi*) as endangered or threatened may be warranted. *Id.* at 19,260–61.

158.    The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by September 25, 2015.

159.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the Clear Lake hitch (*Lavinia exilicauda chi*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

160.    Until Defendants act and make this 12-month finding and issue a final listing determination, the Clear Lake hitch (*Lavinia exilicauda chi*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

### W. Petition to List the U.S. Population of Northwestern Moose as a Threatened or Endangered Distinct Population Segment

161.    On July 9, 2015, the Service received a petition from the Center and other interested persons requesting that the Service list the U.S. population of northwestern moose as a threatened or endangered distinct population segment. 90-Day Findings on 2 Petitions, 81 Fed. Reg. 35,698, 37,700–01 (June 3, 2016).

162.    On June 3, 2016, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the U.S. population of northwestern moose (*Alces alces andersoni*) as a threatened or endangered distinct population segment may be warranted. *Id.*

163.   The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by July 9, 2016.

164.   By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the U.S. population of northwestern moose (*Alces alces andersoni*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

165.   Until Defendants act and make this 12-month finding and issue a final listing determination, the U.S. population of northwestern moose (*Alces alces andersoni*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**X.  Petition to List the Western Bumble Bee as an Endangered or Threatened Species**

166.   On September 21, 2015, the Service received a petition requesting that the Service list the western bumble bee (*Bombus occidentalis*) as endangered or threatened under the ESA. 90-Day Findings on 29 Petitions, 81 Fed. Reg. 14,058, 14,071–72 (March 16, 2016).

167.   On March 16, 2016, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the western bumble bee (*Bombus occidentalis*) as endangered or threatened may be warranted. *Id.*

168.   The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by September 21, 2016.

169.   By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-

month finding for the western bumble bee (*Bombus occidentalis*). The Center advised

Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines.

To date, Defendants have failed to make this 12-month finding.

170.    Until Defendants act and make this 12-month finding and issue a final listing

determination, the western bumble bee (*Bombus occidentalis*) will continue to decline toward

extinction. There is no legal excuse for Defendants' failure to act.

### Y.  Emergency Petition to List the Lassics Lupine as an Endangered Species with Critical Habitat

171.    On January 15, 2016, the Service received a petition from the Center and other

interested persons requesting that the Service emergency list the Lassics lupine (*Lupinus

constancei*) as endangered. 90-Day Findings on 10 Petitions, 81 Fed. Reg. 63,160, 63,163 (Sept.

14, 2016).

172.    On September 14, 2016, the Service made a positive 90-finding that the petition

presented substantial scientific or commercial information indicating that listing the Lassics

lupine (*Lupinus constancei*) as endangered may be warranted. *Id.*

173.    The positive 90-day finding triggered a requirement that the Service commence a

status review and make a 12-month finding within a year of receiving the listing petition—i.e.,

by January 15, 2017.

174.    By letter dated November 20, 2019, the Center notified Defendants that they have

violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-

month finding for the Lassics lupine (*Lupinus constancei*). The Center advised Defendants that

the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date,

Defendants have failed to make this 12-month finding.

175.     Until Defendants act and make this 12-month finding and issue a final listing determination, the Lassics lupine (*Lupinus constancei*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**Z.  Petition to List the Tricolored Bat as an Endangered or Threatened Species with Critical Habitat**

176.     On June 14, 2016, the Service received a petition from the Center and other interested persons requesting that the Service list the tricolored bat (*Perimyotis subflavus*) as endangered or threatened. 90-Day Findings for Five Species, 82 Fed. Reg. 60,362, 60,364 (Dec. 20, 2017).

177.     On December 20, 2017, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the tricolored bat (*Perimyotis subflavus*) as endangered or threatened may be warranted. *Id.*

178.     The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by June 14, 2017.

179.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the tricolored bat (*Perimyotis subflavus*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

180.     Until Defendants act and make this 12-month finding and issue a final listing determination, the tricolored bat (*Perimyotis subflavus*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

AA.     **Petition to List the Oblong Rocksnail as an Endangered or Threatened Species with Critical Habitat**

181.    On June 21, 2016, the Service received a petition from the Center and other interested persons requesting that the Service list the Oblong rocksnail (*Leptoxis compacta*) as endangered or threatened. 90-Day Findings for Five Species, 82 Fed. Reg. 60,362, 60,364 (Dec. 20, 2017).

182.    On December 20, 2017, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the Oblong rocksnail (*Leptoxis compacta*) as endangered or threatened may be warranted. *Id.*

183.    The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by June 21, 2017.

184.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the Oblong rocksnail (*Leptoxis compacta*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

185.    Until Defendants act and make this 12-month finding and issue a final listing determination, the Oblong rocksnail (*Leptoxis compacta*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**BB.**     **Petition to List the Venus Flytrap as an Endangered or Threatened Species with Critical Habitat**

186.     On October 21, 2016, the Service received a petition requesting that the Service list the Venus flytrap (*Dionaea muscipula*) as endangered or threatened. 90-Day Findings for Five Species, 82 Fed. Reg. 60,362, 60,365 (Dec. 20, 2017).

187.     On December 20, 2017, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the Venus flytrap (*Dionaea muscipula*) as endangered or threatened may be warranted. *Id.*

188.     The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by October 21, 2017.

189.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the Venus flytrap (*Dionaea muscipula*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

190.     Until Defendants act and make this 12-month finding and issue a final listing determination, the Venus flytrap (*Dionaea muscipula*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**CC.**     **Petition to List the Dixie Valley Toad as an Endangered or Threatened Species**

191.     On September 18, 2017, the Service received a petition from the Center requesting that the Service list the Dixie Valley toad (*Anaxyrus williamsi*) as endangered or

threatened. Notice of Petition Findings and Initiation of Status Reviews, 83 Fed. Reg. 30,091, 30,093 (June 27, 2018).

192.     On June 27, 2018, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the Dixie Valley toad (*Anaxyrus williamsi*) as endangered or threatened may be warranted. *Id.*

193.     The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by September 18, 2018.

194.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the Dixie Valley toad (*Anaxyrus williamsi*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

195.     Until Defendants act and make this 12-month finding and issue a final listing determination, the Dixie Valley toad (*Anaxyrus williamsi*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**DD.      Petition to List the Oregon Vesper Sparrow as an Endangered or Threatened Species with Critical Habitat**

196.     On November 8, 2017, the Service received a petition requesting that the Service list the Oregon vesper sparrow (*Pooecetes gramineus affinis*) as endangered or threatened. Notice of Petition Findings and Initiation of Status Reviews, 83 Fed. Reg. 30,091, 30,093 (June 27, 2018).

197.    On June 27, 2018, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the Oregon vesper sparrow (*Pooecetes gramineus affinis*) as endangered or threatened may be warranted. *Id.*

198.    The positive 90-day finding triggered a requirement that the Service commence a status review and make a 12-month finding within a year of receiving the listing petition—i.e., by November 8, 2018.

199.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding for the Oregon vesper sparrow (*Pooecetes gramineus affinis*). The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

200.    Until Defendants act and make this 12-month finding and issue a final listing determination, the Oregon vesper sparrow (*Pooecetes gramineus affinis*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

## II. SIX OVERDUE FINAL LISTING DETERMINATIONS

### A. Final Listing Determination and Final Critical Habitat Designation for Graham's Beardtongue

201.    Graham's beardtongue (*Penstemon grahamii*) has been petitioned for listing three times. Threatened Status for *Penstemon grahamii* (Graham's beardtongue) With Critical Habitat, 71 Fed. Reg. 3,158, 3,159 (Jan. 19, 2006). It has been proposed for listing three times, beginning over 40 years ago in 1976. *Id.* at 3,158; *see also id.*; Threatened Species Status for Graham's Beardtongue (*Penstemon grahamii*) and White River Beardtongue (*Penstemon scariosus var. albifluvis*), 78 Fed. Reg. 47,590 (Aug. 6, 2013); Threatened Species Status for Graham's Beardtongue (*Penstemon grahamii*) and White River Beardtongue (*Penstemon scariosus var.*

*albifluvis*); Designation of Critical Habitat for Graham's Beardtongue and White River Beardtongue, 84 Fed. Reg. 48,090 (Sept. 12, 2019).

202.     The Service most recently reopened the comment period on its August 6, 2013 proposed rules to list Graham's beardtongue (*Penstemon grahamii*) as threatened and designate critical habitat for the species for 30 days. 84 Fed. Reg. 48,090. The 2013 proposed rule was reinstated following a court order issued on December 15, 2017 vacating the Service's withdrawal of the proposed rule. *Id.* at 48,091.

203.     The reinstatement of Service's 2013 proposal to list Graham's beardtongue (*Penstemon grahamii*), and to designate critical habitat for Graham's beardtongue, Designation of Critical Habitat for Graham's Beardtongue (*Penstemon grahamii*) and White River Beardtongue (*Penstemon scariosus var. albifluvis*), 78 Fed. Reg. 47,590 (Aug. 6, 2013), triggered a requirement that the Secretary make a final determination on the proposed listing within one year of publication of the proposed regulation. 16 U.S.C. § 1533(b)(6)(A). The Secretary was thus required to make a final determination on the species' status by August 6, 2014 or, at the latest, within one year of the reinstatement of the proposed rule pursuant to Court order (i.e., by December 15, 2018).

204.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4(b)(6) of the ESA, 16 U.S.C. § 1533(b)(6), by failing to make a final listing determination and critical habitat designation for the species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make a final listing determination or critical habitat designation on Graham's beardtongue's (*Penstemon grahamii*) status.

205.     Until Defendants act and make a final listing determination and critical habitat designation, Graham's beardtongue (*Penstemon grahamii*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**B. Final Listing Determination the Panama City Crayfish**

206.     On April 20, 2010, the Service received a petition from the Center and other interested persons requesting that the Service list the Panama City crayfish (*Procambarus econfinae*) as endangered or threatened. Threatened Species Status for the Panama City Crayfish, 83 Fed. Reg. 330, 331 (Jan. 3, 2018).

207.     On September 27, 2011, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the Panama City crayfish (*Procambarus econfinae*) as endangered or threatened may be warranted. *Id.*

208.     After the Service failed to complete a 12-month finding for listing the Panama City crayfish (*Procambarus econfinae*) in accordance with the Act's statutory guidelines, the Center filed suit against the Service resulting in a settlement were the Service agreed to issue a 12-month finding to the Federal Register no later than September 30, 2017. *Id.* The court later approved an extension allowing the Service to submit its 12-month finding no later than December 29, 2017. *Id.*

209.     The Service subsequently proposed to list the Panama City crayfish (*Procambarus econfinae*) as threatened on January 3, 2018. *Id.* at 330.

210.     The Service's proposal triggered a requirement that the Secretary make a final determination on the proposed listing determination within one year of publication of the proposed regulation. 16 U.S.C. § 1533(b)(6)(A). The Secretary was thus required to make a final determination on the species' status by January 3, 2019.

211.    By letter dated November 20, 2019, the Center notified Defendants that they have

violated section 4(b)(6) of the ESA, 16 U.S.C. § 1533(b)(6), by failing to make a final listing

determination for the species. The Center advised Defendants that the Center intended to file suit

to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make a

final listing determination for the Panama City crayfish (*Procambarus econfinae*).

212.    Until Defendants act and make a final listing determination and critical habitat

designation, the Panama City crayfish (*Procambarus econfinae*) will continue to decline toward

extinction. There is no legal excuse for Defendants' failure to act.

**C. Final Listing Determination and Critical Habitat Designation for the Island Marble Butterfly**

213.    The Service received several petitions, including one submitted by the Center and

other interested persons, requesting that the Service list the island marble butterfly (*Euchloe

ausonides insulanus*) as endangered or threatened. Endangered Status for the Island Marble

Butterfly and Designation of Critical Habitat, 83 Fed. Reg. 15,900, 15,901–902 (Apr. 12, 2018).

214.    On August 19, 2014, the Service made a positive 90-finding that the petition

presented substantial scientific or commercial information indicating that listing the island

marble butterfly (*Euchloe ausonides insulanus*) as endangered or threatened may be warranted.

*Id.* at 15,902.

215.    After the Service failed to complete a 12-month finding for list the island marble

butterfly (*Euchloe ausonides insulanus*) in accordance with the Act's statutory guidelines, the

Xerxes Society filed suit against the Service resulting in a settlement whereby the Service agreed

to issue a 12-month finding to the Federal Register no later than March 31, 2016. *Id.* The Service

concluded in that 12-month finding that the listing of the island marble butterfly (*Euchloe

ausonides insulanus*) was warranted but precluded by higher priority listing actions. *Id.*

216.     The Service subsequently proposed to list the island marble butterfly (*Euchloe ausonides insulanus*) as endangered and proposed critical habitat for the species on April 12, 2018. 83 Fed. Reg. 15,900.

217.     The Service's proposal triggered a requirement that the Secretary make a final determination on the proposed listing determination and critical habitat designation within one year of publication of the proposed regulation. 16 U.S.C. § 1533(b)(6)(A). The Secretary was thus required to make a final determination on the species' status by April 12, 2019.

218.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4(b)(6) of the ESA, 16 U.S.C. § 1533(b)(6), by failing to make a final listing determination and critical habitat designation for the species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make a final listing determination and critical habitat designation for the island marble butterfly (*Euchloe ausonides insulanus*).

219.     Until Defendants act and make a final listing determination and critical habitat designation, the island marble butterfly (*Euchloe ausonides insulanus*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**D. Final Listing Determination for the Black-capped Petrel**

220.     On September 1, 2011, the Service received a petition requesting that the Service list the black-capped petrel (*Pterodroma hasitata*) as endangered or threatened. Threatened Species Status for Black-Capped Petrel With a Section 4(d) Rule, 83 Fed. Reg. 50,560, 50,561 (Oct. 9, 2018).

221.     On June 21, 2011, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the black-capped petrel (*Pterodroma hasitata*) as endangered or threatened may be warranted. *Id.*

222.     After the Service failed to complete a 12-month finding for the black-capped petrel (*Pterodroma hasitata*) in accordance with the Act's statutory guidelines, the Center filed suit against the Service resulting in a settlement were the Service agreed to issue a 12-month finding to the Federal Register no later than September 30, 2018. *Id.*

223.     The Service subsequently proposed to list the black-capped petrel (*Pterodroma hasitata*) as threatened with a section 4(d) rule on October 9, 2018. 83 Fed. Reg. 50,560.

224.     The Service's proposal triggered a requirement that the Secretary make a final determination on the proposed listing determination within one year of publication of the proposed regulation. 16 U.S.C. § 1533(b)(6)(A). The Secretary was thus required to make a final determination on the species' status by October 9, 2019.

225.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4(b)(6) of the ESA, 16 U.S.C. § 1533(b)(6), by failing to make a final listing determination for the species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make a final listing determination for the black-capped petrel (*Pterodroma hasitata*).

226.     Until Defendants act and make a final listing determination and critical habitat designation, the black-capped petrel (*Pterodroma hasitata*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

E.  **Final Listing Determination and Critical Habitat Designation for the Slenderclaw Crayfish**

227.     On April 20, 2010, the Service received a petition from the Center and other interested persons requesting that the Service list the slenderclaw crayfish (*Cambarus cracens*) as endangered or threatened. Threatened Species Status With Section 4(d) Rule and Critical Habitat Designation for Slenderclaw Crayfish, 83 Fed. Reg. 50,582, 50,584 (Oct. 9, 2018).

228.     On September 27, 2011, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the slenderclaw crayfish (*Cambarus cracens*) as endangered or threatened may be warranted. *Id.*

229.     After the Service failed to complete a 12-month finding for the slenderclaw crayfish (*Cambarus cracens*) in accordance with the Act's statutory guidelines, the Center filed suit against the Service resulting in a settlement were the Service agreed to issue a 12-month finding to the Federal Register no later than September 30, 2018. *Id.*

230.     The Service subsequently proposed to list the slenderclaw crayfish (*Cambarus cracens*) as threatened with a section 4(d) rule and proposed critical habitat for the species on October 9, 2018. 83 Fed. Reg. 50,582.

231.     The Service's proposal triggered a requirement that the Secretary make a final determination on the proposed listing determination and critical habitat designation within one year of publication of the proposed regulation. 16 U.S.C. § 1533(b)(6)(A). The Secretary was thus required to make a final determination on the species' status by October 9, 2019.

232.     By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4(b)(6) of the ESA, 16 U.S.C. § 1533(b)(6), by failing to make a final listing determination and critical habitat designation for the species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date,

Defendants have failed to make a final listing determination and critical habitat designation for the slenderclaw crayfish (*Cambarus cracens*).

233.     Until Defendants act and make a final listing determination and critical habitat designation, the slenderclaw crayfish (*Cambarus cracens*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**F.  Final Listing Determination and Final Critical Habitat Determination for the Atlantic Pigtoe**

234.     On April 20, 2010, the Service received a petition from the Center and other interested persons requesting that the Service list the Atlantic pigtoe (*Fusconaia masoni*) as endangered or threatened. Threatened Species Status With Section 4(d) Rule and Critical Habitat Designation for Atlantic Pigtoe, 83 Fed. Reg. 51,570, 51,572 (Oct. 11, 2018).

235.     On September 27, 2011, the Service made a positive 90-finding that the petition presented substantial scientific or commercial information indicating that listing the Atlantic pigtoe (*Fusconaia masoni*) as endangered or threatened may be warranted. *Id.*

236.     After the Service failed to complete a 12-month finding for the Atlantic pigtoe in accordance with the Act's statutory guidelines, the Center filed suit against the Service resulting in a settlement in which the Service agreed to issue a 12-month finding to the Federal Register no later than September 30, 2018. *Id.*

237.     The Service subsequently proposed to list the Atlantic pigtoe (*Fusconaia masoni*) as threatened and designate critical habitat for the species on October 11, 2018. 83 Fed. Reg. 51,570.

238.     The Service's proposal triggered a requirement that the Secretary make a final determination on the proposed listing determination and critical habitat designation within one year of publication of the proposed regulation. 16 U.S.C. § 1533(b)(6)(A). The Secretary was

thus required to make a final determination on the species' status and issue a final critical habitat designation by October 11, 2019.

239.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4(b)(6) of the ESA, 16 U.S.C. § 1533(b)(6), by failing to make a final listing determination and critical habitat designation for the species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make a final listing determination or critical habitat designation for the Atlantic pigtoe (*Fusconaia masoni*).

240.    Until Defendants act and make a final listing determination and critical habitat designation, the Atlantic pigtoe (*Fusconaia masoni*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

## III.    FOUR OVERDUE CRITICAL HABITAT DESIGNATIONS

### A.  TWO OVERDUE PROPOSED CRITICAL HABITAT DESIGNATIONS

#### 1. Proposed Critical Habitat Designation for the Texas Hornshell

241.    On February 9, 2018, the Service listed the Texas hornshell (*Popenaias popeii*), a freshwater mussel species from New Mexico, Texas, and Mexico, as an endangered species under the Act. Endangered Species Status for the Texas Hornshell, 83 Fed. Reg. 5,720 (Feb. 9, 2018). At the time of listing the Service stated that it was still in the process of completing the required analyses of the impacts related to possible exclusions to the designation of critical habitat and that the designation of critical habitat was prudent but therefore not determinable at that time. *Id.* at 5,735.

242.    The Service's finding that critical habitat was not determinable at the time of listing triggered a requirement that the Secretary make a final critical habitat designation not later

than one year later. 16 U.S.C. § 1533(b)(6)(C)(ii). The Secretary was thus required to publish a final critical habitat designation by February 9, 2019.

243.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4(b)(6)(C)(ii), by failing to propose and finalize critical habitat for the species within a year of listing it as threatened. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to propose or finalize critical habitat for the Texas hornshell (*Popenaias popeii*).

244.    Until Defendants act and make a final critical habitat designation, the Texas hornshell (*Popenaias popeii*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

### 2. Proposed Critical Habitat Designation for the Louisiana Pine Snake

245.     On April 6, 2018, the Service listed the Louisiana pinesnake (*Pituophis ruthveni*), a reptile species from Louisiana and Texas, as a threatened species under the Act. Threatened Species Status for the Louisiana Pinesnake, 83 Fed. Reg. 14,958 (Apr. 6, 2018). At the time of listing the Service stated that it was still in the process of obtaining the specific information needed to analyze the impacts of critical habitat designation and that the designation of critical habitat was prudent but therefore not determinable at that time. *Id.* at 14,980.

246.    The Service's finding that critical habitat was not determinable at the time of listing triggered a requirement that the Secretary make a final critical habitat designation not later than one year later. 16 U.S.C. § 1533(b)(6)(C)(ii). The Secretary was thus required to publish a final critical habitat designation by April 6, 2019.

247.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4(b)(6)(C)(ii), by failing to propose and finalize critical habitat for the species

within a year of listing it as threatened. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to propose or finalize critical habitat for the Louisiana pinesnake (*Pituophis ruthveni*).

248.    Until Defendants act and make a final critical habitat designation, the Louisiana pinesnake (*Pituophis ruthveni*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

## B.  TWO OVERDUE FINAL CRITICAL HABITAT DESIGNATIONS

### 1. Final Critical Habitat Designation for the Candy Darter

249.    On November 21, 2018, in response to a petition submitted by the Center and other interested persons, the Service listed the candy darter (*Etheostoma osburni*), a freshwater fish species from Virginia and West Virginia, as an endangered species under the Act, Endangered Species Status for the Candy Darter, 83 Fed. Reg. 58,747 (Nov. 21, 2018), and concurrently proposed to designate critical habitat for the species. Designation of Critical Habitat for the Candy Darter, 83 Fed. Reg. 59,232 (Nov. 21, 2018). The Service did not find critical habitat to be not determinable at the time of listing. *See* 16 U.S.C. § 1533(6)(C)(ii).

250.    The Service's listing of the candy darter (*Etheostoma osburni*) as an endangered species triggered a requirement that the Secretary make a final critical habitat designation concurrently with listing. 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(C). Because the Secretary did not find critical habitat to be not determinable at the time of listing, the Secretary was required to make a final critical habitat designation on November 21, 2018.

251.    Additionally, the Service's proposed critical habitat designation triggered a requirement that the Secretary make a final determination on the proposed critical habitat designation within one year of publication of the proposed regulation. 16 U.S.C. §

1533(b)(6)(A). The Secretary was thus again required to publish a final critical habitat

designation by November 21, 2019.

252.    By letter dated November 20, 2019, the Center notified Defendants that they have

violated section 4(a)(3)(A)(i) and section 4(b)(6)(C) of the ESA, 16 U.S.C. § 1533(a)(3)(A)(i),

(b)(6)(C), by failing to make a final critical habitat designation for the species concurrent with

listing it as endangered. The Center advised Defendants that the Center intended to file suit to

enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make a final

critical habitat designation for the candy darter (*Etheostoma osburni*), also violating section

4(b)(6)(A) of the ESA.

253.    Until Defendants act and make a final critical habitat designation, the candy darter

(*Etheostoma osburni*) will continue to decline toward extinction. There is no legal excuse for

Defendants' failure to act.

### 2. Final Critical Habitat Designation for the Trispot Darter

254.     On December 28, 2018, in response to a petition submitted by the Center and

other interested persons, the Service listed trispot darter (*Etheostoma trisella*), a fish species in

the Cossa River system in Alabama, Georgia, and Tennessee, as a threatened species under the

Act, Threatened Species Status for the Trispot Darter, 83 Fed. Reg. 67,131 (Dec. 28, 2018), and

concurrently proposed to designate critical habitat for the species. Designation of Critical Habitat

for the Trispot Darter, 83 Fed. Reg. 67,190 (Dec. 28, 2018). The Service did not find critical

habitat to be not determinable at the time of listing. *See* 16 U.S.C. § 1533(6)(C)(ii).

255.    The Service's listing of the trispot darter (*Etheostoma trisella*) as an endangered

species triggered a requirement that the Secretary make a final critical habitat designation

concurrently with listing. 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(C). Because the Secretary did not

find critical habitat to be not determinable at the time of listing, the Secretary was required to make a final critical habitat designation on December 28, 2018.

256.    Additionally, the Service's proposed critical habitat designation triggered a requirement that the Secretary make a final determination on the proposed critical habitat designation within one year of publication of the proposed regulation. 16 U.S.C. § 1533(b)(6)(A). The Secretary was thus again required to publish a final critical habitat designation by December 28, 2019.

257.    By letter dated November 20, 2019, the Center notified Defendants that they have violated section 4(a)(3)(A)(i) and section 4(b)(6)(C) of the ESA, 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(C), by failing to make a final critical habitat designation for the species concurrent with listing it as endangered. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make a final critical habitat designation for the trispot darter (*Etheostoma trisella*), also violating section 4(b)(6)(A) of the ESA.

258.    Until Defendants act and make a final critical habitat designation, the trispot darter (*Etheostoma trisella*) will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

## CLAIMS FOR RELIEF

### First Claim for Relief
### Failure to Make Timely 12-Month Findings for 231 Species

259.    The Center re-alleges the allegations in paragraphs 1–258.

260.    Defendants' failure to perform their mandatory, non-discretionary duty to make timely 12-month findings for the 231 species specified in paras. 50–200 violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failures to make timely 12-month findings also constitute

agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).

## Second Claim for Relief
### Failure to Make Timely Final Listing Determinations for Six Species

261.    The Center re-alleges the allegations in paragraphs 1–260.

262.    Defendants' failure to perform their mandatory, non-discretionary duty to make timely final listing determinations for the six species specified in para. 201–240 violates the ESA. 16 U.S.C. § 1533(b)(6)(A). Defendants' failures to make timely final listing determinations also constitute agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).

## Third Claim for Relief
### Failure to Designate Critical Habitat for Four Species

263.    The Center re-alleges the allegations in paragraphs 1–262.

264.    Defendants' failure to perform their mandatory, non-discretionary duty designate critical habitat for the four species specified in paras. 241–258 violates the ESA. 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(C). Defendants' failures to make timely critical habitat designations also constitute agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).

## REQUEST FOR RELIEF

The Center respectfully requests that the Court enter judgment providing the following relief:

A.    Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month findings for the species enumerated in paras. 50–200;

B.      Provide injunctive relief compelling Defendants to publish in the Federal Register the overdue 12-month findings by a date certain;

C.      Declare that Defendants have violated the ESA and/or the APA by failing to make timely final listing determinations for the species enumerated in paras. 201–240;

D.      Provide injunctive relief compelling Defendants to publish in the Federal Register the overdue final listing determinations by a date certain;

E.      Declare that Defendants have violated the ESA and/or the APA by failing to make timely critical habitat designations for the species enumerated in paras. 241–258;

F.      Provide injunctive relief compelling Defendants to promulgate the overdue final critical habitat designations by a date certain;

G.      Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

H.      Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4), and/or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

I.      Provide such other relief as the Court deems just and proper.


Dated this 27th day of February, 2020                    Respectfully submitted,

                                                         */s/ Ryan Adair Shannon*

                                                         Ryan Adair Shannon
                                                         (D.C. Bar No. OR 0007)
                                                         Center for Biological Diversity
                                                         P.O. Box 11374
                                                         Portland, OR 97211-0374
                                                         (503) 283-5474 ext. 407
                                                         rshannon@biologicaldiversity.org

*/s/ Amy R. Atwood*

Amy R. Atwood
(D.C. Bar No. 470258)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6401
atwood@biologicaldiversity.org

*Attorneys for Plaintiff*