**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

CENTER FOR BIOLOGICAL
DIVERSITY,

       Plaintiff,

v.

DEBRA HAALAND, in her official
capacity as Secretary of the
United States Department of
the Interior,[1] *et al.*,

       Defendants.

No. 20-573 (EGS)

---

**MEMORANDUM OPINION**

## I.   Introduction

Plaintiff, the Center for Biological Diversity (the "Center"), brings this action against Defendants Debra Haaland, in her official capacity as Secretary of the United States Department of the Interior; and Martha Williams,[2] in her official capacity as Director of the United States Fish and Wildlife Service (the "FWS" or the "Service"), (collectively

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Secretary of the United States Department of the Interior, Debra Haaland, is substituted as Defendant for the former Secretary of the United States Department of the Interior, David Bernhardt. *See* Fed. R. Civ. P. 25(d).
[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Director of the United States Fish and Wildlife Service, Martha Williams, is substituted as Defendant for the former Director of the United States Fish and Wildlife Service, Aurelia Skipwith. *See* Fed. R. Civ. P. 25(d).

"Defendants"). *See* Compl., ECF No. 1.[3] The Center seeks to compel Defendants to take certain actions under the Endangered Species Act, 16 U.S.C. §§ 1531–1544 ("ESA" or "Act"): (1) to make 12-month findings for 231 species, 16 U.S.C. § 1533(b)(3)(B); (2) to publish final listing determinations for six species, *id.* § 1533(b)(6)(A); and (3) to make critical habitat designations for four species, *id.* § 1533(a)(3)(A)(i), (b)(6)(A)(ii)(I), (b)(6)(C). *See* Compl., ECF No. 1 ¶¶ 259–64.

Pending before the Court is Defendants' Motion for Partial Dismissal, ECF No. 12. Upon careful consideration of the parties' submissions, the applicable law, and the entire record herein, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Partial Dismissal.

## II. Background

### A. Statutory and Regulatory Background

The ESA "represent[s] the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Congress passed this legislation "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a

---

[3] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). "The plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." *Hill*, 437 U.S. at 184.

The ESA mandates that the Secretary of the Interior and the Secretary of Commerce[4] determine whether any species should be listed as endangered[5] or threatened[6] according to five enumerated statutory factors. *See* 16 U.S.C. §§ 1532(15), 1533(a). Listing a species as endangered or threatened triggers certain legal protections. *See, e.g.*, *id.* §§ 1533-1538.

Section 4 of the ESA sets forth the procedure by which a species may be listed as endangered or threatened. *See id.* § 1533. Any "interested person" may petition the FWS to list a

---

[4] The Act requires that the Secretary of the Interior make listing determinations for terrestrial species and that the Secretary of Commerce make listing determinations for most marine species. *See* 16 U.S.C. §§ 1532(15), 1533(a)(2). The Secretaries have delegated their responsibilities to the FWS and the National Marine Fisheries Service, respectively. *See In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. 1, 3 n.3 (D.D.C. 2011), *aff'd sub nom. In re Endangered Species Act Section 4 Deadline Litig.–MDL No. 2165*, 704 F.3d 972 (D.C. Cir. 2013).

[5] The ESA defines "endangered species" as "any species which is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6).

[6] The ESA defines "threatened species" as "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).

species. *Id.* § 1533(b)(3)(A). The Act requires that, "[t]o the
maximum extent practicable, within 90 days," the FWS[7] make an
initial "finding as to whether the petition presents substantial
scientific or commercial information indicating that the
petitioned action may be warranted." *Id.* (describing the "90-day
finding"). If the FWS determines that the petition does not
present substantial information indicating that listing may be
warranted, the agency rejects the petition, and the process
concludes. *See id.* If, however, the FWS determines that the
petition does present substantial information indicating that
listing may be warranted, the agency must publish that finding
in the Federal Register and conduct a scientific review of the
status of the species. *Id.* (detailing the "status review").

The ESA further requires that the FWS issue one of the
following determinations "[w]ithin 12 months after receiving a
petition": (1) listing is "warranted"; (2) listing is "not
warranted"; or (3) listing is "warranted, but . . . precluded"
by other pending proposals for listing species, provided certain
circumstances are present. *Id.* § 1533(b)(3)(B) (discussing the
"12-month finding"). The agency must publish this determination
in the Federal Register. *See id.* "The ESA permits no exceptions
to this 12-month mandatory deadline." *In re Endangered Species*

---

[7] The Secretary has delegated this and other duties in the ESA
to the FWS. *See supra* n.3.

*Act Section 4 Deadline Litig.*, 277 F.R.D. at 4 (D.D.C. 2011);
*Friends of Animals v. Ashe*, 808 F.3d 900, 903 (D.C. Cir. 2015)
("But even if it is not practicable, the Service must make an
initial determination within 12 months of receiving the listing
petition.").[8]

The process concludes here for any species for which the
FWS determines listing is not warranted. *See* 16 U.S.C. §
1533(b)(3)(B)(i). Alternatively, for species whose listing is
warranted, the FWS must "publish in the Federal Register a
general notice and the complete text of a proposed regulation to
implement such action." *Id.* § 1533(b)(3)(B)(ii). Within one year
of publishing that proposed listing rule, the agency must
publish the final listing determination in the Final Register.
*Id.* § 1533(b)(6)(A).

A species whose listing is warranted but precluded is
considered a candidate for listing under the ESA. *See* 2022
Candidate Notice of Review ("CNOR"), 87 Fed. Reg. 26,152 (May 3,
2022) ("A candidate species is one for which we have on file
sufficient information on biological vulnerability and threats
to support a proposal for listing as endangered or threatened,

---

[8] The ESA permits the FWS to "extend the one-year period . . .
for not more than six months for purposes of soliciting
additional data" provided that the agency has found "that there
is substantial disagreement regarding the sufficiency or
accuracy of the available data." 16 U.S.C. § 1533(b)(6)(B)(ii)-
(iii).

but for which preparation and publication of a proposal is precluded by higher priority listing actions."). The FWS must "publish [this] finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based." 16 U.S.C. § 1533(b)(3)(B)(iii). The agency must treat this petition as one that has been resubmitted for consideration. *Id.* § 1533(b)(3)(C)(i). As a result, the FWS must make a new determination within 12 months as to whether listing is warranted or warranted but precluded. *See id.* The agency must also "implement a system to monitor effectively the status" of these candidate species "to prevent a significant risk to the well being of any such species." *Id.* § 1533(b)(3)(C)(iii).

Additionally, the ESA mandates that the agency designate critical habitats[9] "to the maximum extent prudent and determinable . . . concurrently with making a determination . .

---

[9] The ESA defines the critical habitat for an endangered or threatened species as:

> (i) the specific areas within the geographical area occupied by the species, at the time it is listed . . . , on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and
> (ii) specific areas outside the geographical area occupied by the species at the time it is listed . . . , upon a determination by the Secretary that such areas are essential for the conservation of the species.

16 U.S.C. § 1532(5)(A).

. that a species is an endangered species or a threatened species." *Id.* § 1533(a)(3)(A)(i). The agency must make this designation "on the basis of the best scientific data available and after taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat." *Id.* § 1533(b)(2).

As with the listing procedure, the process for designating critical habit is governed by statutory deadlines. *See id.* § 1533(a)(3)(A)(i). However, if critical habitat is not determinable at the time of listing, the Act empowers the agency to extend its deadline to designate critical habitat by "no more than one additional year." *Id.* § 1533(b)(6)(C)(ii). At that time, the FWS "must publish a final regulation, based on such data as may be available at that time, designating, to the maximum extent prudent, such habitat." *Id.*

**B. Factual**

This case concerns "the ongoing failure" of the FWS to comply with statutory deadlines for listing species as threatened or endangered and for designating critical habitats for these species. Compl., ECF No. 1 ¶ 1. In 2011, following multi-district litigation, the FWS entered into two settlement agreements requiring it to complete hundreds of listing determinations. *See id.* ¶ 46 (citing Order Granting Joint Mot.

for Approval of Settlement Agreement and Order of Dismissal of
Center for Biological Diversity's Claims, *In re Endangered
Species Act Section 4 Deadline Litig.*, No. 1:10-mc-00377-EGS,
MDL No. 2165 (D.D.C. Sept. 9, 2011), ECF No. 56; Order Granting
Joint Mot. for Approval of Settlement Agreement and Order of
Dismissal of WildEarth Guardians' Claims, ECF No. 55). As part
of these settlement agreements, the Center agreed to limit its
challenges to the agency's failures to make timely
determinations to no more than 10 species each year. *See*
Stipulated Settlement Agreement, *In re Endangered Species Act
Section 4 Deadline Litig.*, Misc. No. 10-377 (D.D.C. July 12,
2011), ECF No. 42-1 ¶ B(10)(c).

   In September 2016, the FWS announced its multi-year
National Listing Workplan for completing the more than 200
overdue findings required by law but not captured by the
Settlement Agreement. *See* Compl., ECF No. 1 ¶ 47. The agency
updated this Workplan in May 2019 to address its planned actions
for the following five-year period. *See id.* ¶ 49. Despite the
agency's commitments in these Workplans, the FWS missed
statutory deadlines for 30 species in fiscal year 2017, 78
species in fiscal year 2018, and 46 species in fiscal year 2019.
*See id.* ¶ 48.

   At the time the Center filed the Complaint, the
organization alleged that the FWS had failed to make listing

determinations and/or critical habitat designations for 241 species. *See id.* ¶ 5. Specifically, the Center claims that: (1) the agency has not completed a 12-month finding for 231 species, *see id.* ¶ 50-200, 259-60; (2) the agency has not completed a final listing determination for six species, *see id.* ¶¶ 201-40, 261-62; and (3) the agency has not made a proposed or final critical habitat designation for four species, *see id.* ¶¶ 241-58, 263-64.

### C. Procedural

The Center filed this lawsuit on February 27, 2020. *See* Compl., ECF No. 1. On May 4, 2020, Defendants filed this motion, which requests dismissal of the Center's claims with respect to various species. *See* Defs.' Mot. Partial Dismissal, ECF No. 12 at 1; Mem. in Supp. Defs.' Mot. Partial Dismissal ("Defs.' Mot."), ECF No. 12-1 at 1-2. The Center filed its opposition brief on June 8, 2020, *see* Pl.'s Opp'n Defs.' Mot. Partial Dismissal ("Pl.'s Opp'n"), ECF No. 17; and Defendants filed their reply brief on June 25, 2020, *see* Reply Mem. in Supp. Defs.' Mot. Partial Dismissal ("Defs.' Reply"), ECF No. 18.

In August 2021, the Court granted the parties' request that the case be stayed so that they could enter into mediation. Minute Order (Aug. 16, 2021). Mediation resulted in three stipulated settlement agreements, narrowing the dispute between

the parties. *See* ECF No. 28, ECF No. 37, and ECF No. 38.
Defendants' ripe motion is now ready for adjudication.

## III. Legal Standard

### A. Rule 12(b)(1) Motion to Dismiss

"Federal courts lack jurisdiction to decide moot cases
because their constitutional authority extends only to actual
cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464
U.S. 67, 70 (1983) (per curiam). "A case becomes moot—and
therefore no longer a 'Case' or 'Controversy' for purposes of
Article III—when the issues presented are no longer live or the
parties lack a legally cognizable interest in the
outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91
(2013) (citation and internal quotation marks omitted). "This
occurs when, among other things, the court can provide no
effective remedy because a party has already obtained all the
relief that [it has] sought." *Conservation Force v. Jewell*, 733
F.3d 1200, 1204 (D.D.C. 2013) (citation and internal quotation
marks omitted).

"A motion to dismiss for mootness is properly brought under
Rule 12(b)(1) because mootness itself deprives the court of
jurisdiction." *Indian River Cnty. v. Rogoff*, 254 F. Supp. 3d 15,
18 (D.D.C. 2017). "Because Rule 12(b)(1) concerns a court's
ability to hear a particular claim, the court must scrutinize
the plaintiff's allegations more closely when considering a

10

motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003)). In so doing, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, but the court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

**B. Rule 12(b)(6) Motion to Dismiss**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citation and internal quotation marks omitted). "In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (citation and internal quotation marks omitted). In addition, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## IV.  Analysis

### A. The Center's Claim Regarding the Island Marble Butterfly is Moot

Federal courts possess constitutional authority to exercise jurisdiction only over "actual, ongoing controversies." *McBryde v. Comm. to Review Circuit Council Conduct*, 264 F.3d 52, 55 (D.C. Cir. 2001) (citation omitted). Accordingly, a court must determine if there is a live controversy "'through all stages' of the litigation." *21st Century Telesis Joint Venture v. F.C.C.*, 318 F.3d 192, 198 (D.C. Cir. 2003) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). "Even where litigation poses a live controversy when filed," *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc); the court may not decide "[i]f events outrun the controversy such that the court can grant no meaningful relief," *McBryde*, 264 F.3d at 55.

Defendants move to dismiss the Center's claim regarding the island marble butterfly (*Euchloe ausonides insulanus*) as moot. *See* Defs.' Mot., ECF No. 12-1 at 20. They explain that, since the Center filed the Complaint, the FWS has completed a final listing determination and critical habitat designation for the species. *See id.; see also* 85 Fed. Reg. 26,786 (May 5, 2020) (listing species as endangered and designating its critical

habitat).[10] The Center "does not contest dismissal of the
Complaint with respect to th[is] species." Pl.'s Opp'n, ECF No.
17 at 32.

The Court agrees that the island marble butterfly claim is
moot. The Center sought injunctive and declaratory relief for
Defendants' failure to make a final listing determination and
critical habitat designation. Compl., ECF No. 1 ¶¶ 213-19, 261-
64; *id.* at 60-61 (Request for Relief). The agency has now
completed both acts, and the Center has "obtained all the relief
that [it] sought." *Monzillo v. Biller*, 735 F.2d 1456, 1459 (D.C.
Cir. 1984); *see also People for the Ethical Treatment of
Animals, Inc. v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91,
96 (D.D.C. 2014) ("That mootness of a claim against a specific
agency action also moots claims for declaratory relief over
those specific agency actions is well-attested in D.C. Circuit
precedent."). There is nothing left for the Court to order. *Cf.
Conservation Force*, 733 F.3d at 1204 (holding that the agency's
publication of a 12-month finding "render[ed] moot" the

---

[10] In their motion, Defendants explain that "[t]he Federal
Register will publish the final listing determination and
critical habitat designation for the island marble butterfly on
May 5, 2020, and has also made FWS's finding available for
public inspection today [May 4, 2020]." Defs.' Mot., ECF No. 12-
1 at 20 n.9. The Court may "take judicial notice of materials
published in the Federal Register." *Banner Health v. Sebelius*,
797 F. Supp. 2d 97, 112 (D.D.C. 2011) (citing 44 U.S.C. § 1507
("The contents of the Federal Register shall be judicially
noticed.")).

plaintiff's challenge to the agency's failure to publish a 12-month finding for the same species on an earlier petition). Because there is no remaining controversy, the Court **DISMISSES** the claim regarding the island marble butterfly as moot. *See Conservation Force v. Salazar*, 851 F. Supp. 2d 39, 45 (D.D.C. 2012).

### B. The Court Does Not Have Jurisdiction Over the Center's Claims Regarding Four Other Species

Defendants move to dismiss the Center's claims with respect to the following species because their listing petitions have been withdrawn: Comal Springs salamander (*Eurycea sp. 8*), desert massasauga (*Sistrurus catenatus edwardsii*), Wet Canyon talussnail (*Sonorella macrophallus*), and yellow pond-lily (*Nuphar lutea ssp. sagittifolia*). *See* Defs.' Mot., ECF No. 12-1 at 22-25. The Center "does not contest dismissal of the Complaint with respect to th[ese] species." Pl.'s Opp'n, ECF No. 17 at 32.

The Court concludes that it does not have jurisdiction over these four listing petitions. The ESA's citizen-suit provision permits parties to file a civil action "where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. 1540(g)(1)(C). As with any other waiver of sovereign immunity, this provision must "be strictly construed,

in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). It follows, then, that the plaintiff first "must identify a non-discretionary, statutory duty." *Conservation Force v. Salazar*, 753 F. Supp. 2d 29, 35 (D.D.C. 2010), *aff'd*, 699 F.3d 538 (D.C. Cir. 2012). One applicable duty is for the FWS to make 12-month findings for the listing petitions it receives. *See* 16 U.S.C. § 1533(b)(3)(B); *Friends of Animals v. Jewell*, 828 F.3d 989, 991 (D.C. Cir. 2016) ("The Secretary's duty to comply with [S]ection 4's 12-month finding provision—once triggered by a positive 90-day finding—is non-discretionary and therefore falls within the citizen-suit provision."). There is no such duty without an operative petition. *See Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*, 531 F.3d 792, 804 (9th Cir. 2008); *cf. Ashe*, 808 F.3d at 904 (explaining that the FWS "cannot violate the duty to make a final determination before that duty has come into existence"). Here, the Secretary has no duty to act because the petitions for the four species listed above have been withdrawn. *See* Ltr. from Ms. Curry to Mr. Miranda, ECF No. 12-2 (withdrawing petition for yellow pond-lily); Ltr. from Ms. Cotton to Mr. Yang, ECF No. 12-3 (withdrawing petition for Wet Canyon talussnail); Ltr. from Ms. Jones to Ms. Lueders, ECF No. 12-4 (withdrawing petitions

for Comal Springs salamander and desert massasauga).[11] Consequently, the Center has not satisfied the requirements to sue under the ESA's citizen-suit provision.

Nor does the Court possess jurisdiction over this or any other claim in the Complaint on the basis of the Administrative Procedure Act ("APA"). In the Complaint, the Center brought its claims under the ESA's citizen-suit provision and, in the alternative, under the APA. *See* Compl., ECF No. 1 ¶¶ 259-64. "[T]he APA by its terms independently authorizes review only when 'there is no other adequate remedy in a court.'" *Bennett v. Spear*, 520 U.S. 154, 161-62 (1997) (quoting 5 U.S.C. § 704). The ESA's citizen-suit provision provides such a remedy for the Center's claims. *Conservation Force v. Salazar*, 715 F. Supp. 2d 99, 104 n.6 (D.D.C. 2010) (citing 16 U.S.C. § 1540(g)(1)). Because the ESA presents an avenue for review of agency action, relief under the APA is unavailable. *See Coos Cnty.*, 531 F.3d at 810. In other words, despite the styling in the Complaint, the Center's claims may be construed only as ESA claims, not as APA claims.

---

[11] On a Rule 12(b)(1) motion, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Accordingly, the Court **DISMISSES** the Center's 12-month finding claims for the Comal Springs salamander, desert massasauga, Wet Canyon talussnail, and yellow pond-lily.

### C. The Center Did Not Comply with the ESA's Notice Requirement as to the Panama City Crayfish

The ESA prohibits a potential plaintiff from filing a civil action "prior to sixty days after written notice has been given to the Secretary." 16 U.S.C. § 1540(g)(2)(C). This requirement "is a mandatory, not optional, condition precedent for suit." *Ashe*, 808 F.3d at 903 (citations and internal quotation marks omitted). This notice letter "must, at a minimum, 'provide sufficient information of a violation so that the Secretary or [agency] [can] identify and attempt to abate the violation.'" *Rsch. Air, Inc. v. Norton*, No. CIV.A. 05-623 (RMC), 2006 WL 508341, at *10 (D.D.C. Mar. 1, 2006) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998)).

Defendants move to dismiss the Center's claim regarding the Panama City crayfish (*Procambarus econfinae*) for failure to comply with this notice requirement. *See* Defs.' Mot., ECF No. 12-1 at 25-27. They cite the Center's notice letter and explain that the letter discusses "a potential claim for failure to propose critical habitat" but not a potential claim for failure to make a final listing determination. *Id.* at 26 (citing Ltr.

from Mr. Greenwald to Sec'y Bernhardt, ECF No. 12-5 at 9).[12] The Center "does not contest dismissal of the Complaint with respect to th[is] species." Pl.'s Opp'n, ECF No. 17 at 32.

The Court agrees with Defendants that the Center has not complied with the notice requirement for the Panama City crayfish. The Center's letter to the Secretary includes only one violation for the Panama City crayfish for which the organization "intend[ed] to seek a judicial order to compel the Service's action if the Service d[id] not remedy . . . within the next 60 days": the agency's failure to propose critical habitat. Ltr. from Mr. Greenwald to Sec'y Bernhardt, ECF No. 12-5 at 3, 9 (citing 16 U.S.C. § 1540(g)(2)(C)). Because this letter did not notify the Secretary that the Center also intended to challenge FWS' failure to complete the 12-month finding for the species, the letter is ineffective notice as to the organization's 12-month finding claim. *Conservation Force*, 715 F. Supp. 2d at 104 ("[I]t would be unfair to permit this claim to proceed."). The Court therefore **DISMISSES** the claim regarding the Panama City crayfish.

_____

[12] The Court may consider this notice letter in ruling on Defendants' Motion to Dismiss. *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." (citations and internal quotation marks omitted)).

**D. The Center's Claims Regarding 192 Species Are Not Time-Barred**

Finally, Defendants move to dismiss the Center's claims regarding the agency's failure to make 12-month findings for 192 species. *See* Defs.' Mot., ECF No. 12-1 at 27.[13] They argue that: (1) the claims are time-barred; (2) the claims should not be equitably tolled; and (3) the Center has another adequate remedy. *See id.* at 27-43. The Center contests all of Defendants' arguments. *See* Pl.'s Opp'n, ECF No. 17 at 16-32. For the reasons that follow, the Court determines that the Center's claims are timely and **DENIES** Defendants' motion.

The parties rightly agree that the ESA does not contain any provision specifying a statute of limitations. *See* Defs.' Mot., ECF No. 12-1 at 27; *see generally* Pl.'s Opp'n, ECF No. 17 at 16-31; 16 U.S.C. §§ 1531–1544. Instead, they dispute whether a different statute of limitations applies to the Center's claims: 28 U.S.C. § 2401(a). *See* 28 U.S.C. § 2401(a). This statute states that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." *Id.* Defendants argue that Section 2401(a) must apply to the Center's claims

---

[13] Defendants' motion to dismiss claims as time-barred includes the four species addressed in Part IV.B. of this Opinion. Because the Court has already determined that it does not have jurisdiction over claims regarding those species, it will not consider those species again here.

because it is "presumptively applicable to 'every civil action commenced against the United States.'" Defs.' Reply, ECF No. 18 at 8 (emphasis omitted) (quoting 28 U.S.C. § 2401(a)).

The Center does not deny that "Section 2401 is a general catchall statute that applies to all civil actions against the government." *Felter v. Norton*, 412 F. Supp. 2d 118, 124 (D.D.C. 2006); *see* Pl.'s Opp'n, ECF No. 17 at 16-31. Nevertheless, it argues that this six-year limitations period does not apply to its claims because the FWS' "failure to make timely 12-month findings for hundreds of species constitutes a continuing violation of the Act." Pl.'s Opp'n, ECF No. 17 at 28. The continuing violation doctrine is an exception to the general rule that "'[a] claim normally accrues when the factual and legal prerequisites for filing suit are in place.'" *Earle v. Dist. of Columbia*, 707 F.3d 299, 306 (D.C. Cir. 2012) (quoting *Norwest Bank Minn. Nat'l Ass'n v. FDIC*, 312 F.3d 447, 451 (D.C. Cir. 2002)). Although "[t]his doctrine is 'muddled,'" the D.C. Circuit recognizes at least two applications: (1) where the "character [of the challenged conduct] as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact . . . that reveals its illegality"; and (2) where "the text of the pertinent law imposes a continuing obligation to act or refrain from acting." *Id.* at 306-07 (citations omitted).

21

The Center argues that the text of the ESA imposes a continuing obligation on the FWS to make 12-month findings for petitioned species. *See* Pl.'s Opp'n, ECF No. 17 at 17.[14] Whether the text imposes a continuing obligation on the agency "is a question of statutory construction." *Earle*, 707 F.3d at 307. The statutory language at issue instructs that the FWS "shall make" its finding on a listing petition "[w]ithin 12 months after receiving a petition." 16 U.S.C. § 1533(b)(3)(B). The Center interprets this text by looking to the purpose of the Act and its legislative history—specifically, for the 1978 and 1982 amendments to the Act requiring the FWS to act on petitions by certain mandatory deadlines. *See* Pl.'s Opp'n, ECF No. 17 at 17-18 (citing 16 U.S.C. § 1533(b)(3); H.R. Rep. No. 97-835 at 20-22 (1982) (Conf. Rep.)). The 12-month listing deadline "'replace[d] the Secretary's discretion with mandatory, nondiscretionary duties'" in order to address the "'footdragging efforts of a delinquent agency.'" *Id.* at 9 (emphasis omitted) (quoting H.R. Rep. No. 97-835 at 20-22). These deadlines, the Center explains, are meant to "'expedite the decisionmaking process and . . .

_____

[14] The Center does not argue that the "character [of the challenged conduct] as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact . . . that reveals its illegality." *Earle*, 707 F.3d at 306-07 (citation omitted). The Court therefore will not consider this application of the continuing violation doctrine.

ensure prompt action,'" *id.* (quoting H.R. Rep. No. 97-835 at 19); not "shield [the agency's] ongoing failure to act from challenge," *id.* at 18.

The D.C. Circuit has not yet decided whether Section 4 imposes a continuing obligation on the FWS to act on listing petitions, and the parties contest the significance of the circuit's related caselaw. The Center cites three D.C. Circuit cases to support its position that a statute of limitations is "inapplicable in cases challenging 'not . . . what the agency has done but rather . . . what the agency has yet to do.'" Pl.'s Opp'n, ECF No. 17 at 16-17 (quoting *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999)). The Court considers each case briefly.

In *In re United Mine Workers*, the D.C. Circuit considered a petition for a writ of mandamus to compel the Department of Labor to issue final regulations controlling diesel engine exhaust in coal mines. *See* 190 F.3d at 546. The statute at issue required the Secretary of Labor to issue final regulations, or to explain why she would not issue final regulations, within ninety days of the certification of the record of a hearing, *see id.* at 550 (citing 30 U.S.C. § 811(a)(4)); and required that petitions for review of any regulations be filed within sixty days of promulgation, *see id.* at 548 (citing 30 U.S.C. § 811(d)). The D.C. Circuit allowed the suit to proceed even

though the union sued eight years after the agency missed its deadline "[b]ecause the [union] does not complain about what the agency has done but rather about what the agency has yet to do." *See id.* at 549. The court's analysis thus centered solely on the fact that the statute required the agency to act and the agency had not yet acted. *See id.* at 548-49.

The decision in *In re Bluewater Network*, 234 F.3d 1305 (D.C. Cir. 2000) is similar. There, the petitioners filed for a writ of mandamus to compel the Coast Guard to issue regulations pursuant to the Oil Pollution Act nine years after the statutorily imposed deadline. *See* 234 F.3d at 1307. Even though the act imposed a 90-day statute of limitations on challenges to any regulations, *see id.* at 1308 (citing 33 U.S.C. § 2717(a)); the court permitted the challenge as timely because "[t]he statute *compels* the agency to establish . . . standards" and "[w]hat is at issue in this case is the *absence of any regulations*," *see id.* at 1314. As in *In re United Mine Workers*, the decision here turned entirely on the agency's inaction against a statutory mandate to act. *See id.*

Both of these cases involved fact patterns like the one at issue here. Each case concerned a statute that requires an agency to take some action by a particular deadline. *See* 16 § 1533(b)(3)(B); *In re United Mine Workers*, 190 F.3d at 550; *In re Bluewater*, 234 F.3d at 1307. Each statute is governed by a

statute of limitations. *See* 28 U.S.C. § 2401(a) (ESA); *In re United Mine Workers*, 190 F.3d at 548; *In re Bluewater*, 234 F.3d at 1308. The agency in each case failed to take the statutorily required action. *See supra*; *In re United Mine Workers*, 190 F.3d at 546; *In re Bluewater*, 234 F.3d at 1307. And in each case, the challenge is to the agency's failure to act pursuant to its statutory mandate. *See In re United Mine Workers*, 190 F.3d at 546; *In re Bluewater*, 234 F.3d at 1307; Compl., ECF No. 1 ¶¶ 1-260.

The Center also cites *Wilderness Society v. Norton*, 434 F.3d 584 (D.C. Cir. 2006). *See* Pl.'s Opp'n, ECF No. 17 at 19-20. In this case, the D.C. Circuit observed that it "has repeatedly refused to hold that actions seeking relief under 5 U.S.C. § 706(1) to 'compel agency action unlawfully withheld or unreasonably delayed' are time-barred if initiated more than six years after an agency fails to meet a statutory deadline." *Norton*, 434 F.3d at 588 (quoting 5 U.S.C. § 706(1)). Although this language is an accurate summary of the circuit's caselaw, the Court will discount it as dictum because it was not necessary for resolution of the case. *See id.* at 589 (noting that the court "need not reach a final determination on this [time-bar] issue" because the plaintiff lacked standing).

Defendants raise two points to shield themselves from application of these cases. First, they argue that the holdings

in *In re United Mine Workers* and *In re Bluewater* are limited to unreasonable delay claims in the APA and mandamus contexts. *See* Defs.' Reply, ECF No. 18 at 23-24. The Court disagrees. The statute of limitations issue did not turn on any *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC") factor or anything else specific to the APA or mandamus context. *See In re United Mine Workers*, 190 F.3d at 549-56; *In re Bluewater*, 234 F.3d at 1312-16. Indeed, the court considered the TRAC factors only in relation to its analysis of the merits of these cases. *See In re United Mine Workers*, 190 F.3d at 549-56; *In re Bluewater*, 234 F.3d at 1312-16. Second, Defendants claim that these holdings are limited to rulemaking challenges. *See* Defs.' Reply, ECF No. 18 at 24 n.7. This description is also inaccurate since neither case discusses the rulemaking context in its analysis of the statute of limitations issue. *See In re United Mine Workers*, 190 F.3d at 548-49; *In re Bluewater*, 234 F.3d at 1307-15.

Despite this authority, Defendants urge the Court to adopt a different interpretation for the ESA. They explain that the statute imposes a "one-time obligation" to make a 12-month finding. Defs.' Reply, ECF No. 18 at 15 (emphasis omitted). "[T]his sort of requirement," they continue, "only imposes 'a duty of timeliness' for the "'specified action [to] be taken by a date-certain deadline.'" Defs.' Mot., ECF No. 12-1 at 36

(quoting *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987)). By this logic, the ESA does not impose a continuing obligation on the FWS to act, and the agency's failure to make 12-month findings is merely a "discrete unlawful event." Defs.' Mot., ECF No. 12-1 at 36 (quoting *Earle*, 707 F.3d at 306).

To support this argument, Defendants cite binding D.C. Circuit authority that "the lingering effect of an unlawful act is not itself an unlawful act" and "cannot be a continuing wrong which tolls the statute of limitations." *AKM LLC dba Volks Constructors v. Sec'y of Lab.*, 675 F.3d 752, 757 (D.C. Cir. 2012) (internal quotation marks omitted) (quoting *Earle*, 707 F.3d at 306). But this is not relevant to determining the Center's continuing violation claim. *Compare* Pl.'s Opp'n, ECF No. 17 at 17 (arguing only for the second application of the continuing violation exception), *and Earle*, 707 F.3d at 306 (discussing the passage quoted in *AKM* in the context of the first application of the continuing violation exception).

Defendants also cite a pair of cases from the Fifth and Eleventh Circuits discussing the continuing violation doctrine in the context of ESA claims. In both cases, the petitioners challenged the agency's failure to make critical habitat designations. *See Gen. Land Off. v. U.S. Dep't of the Interior*, 947 F.3d 309, 318-19 (5th Cir. 2020); *Ctr. For Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006).

While these cases are on point, the Court will not adopt their
reasoning. Both the Fifth and Eleventh Circuits concluded that
Section 4 does not impose a continuing obligation on the FWS in
part because Section 2401(a) "is a jurisdictional condition
attached to the government's waiver of sovereign immunity, and
as such must be strictly construed." *Hamilton*, 453 F.3d at 1334,
1335; *see Gen. Land Off.*, 947 F.3d at 318. The D.C. Circuit has
since clarified that Section 2401(a) is not a jurisdictional bar
and therefore should be construed like other limitations
periods. *Jackson v. Modly*, 949 F.3d 763, 776 (D.C. Cir. 2020),
*cert. denied sub nom. Jackson v. Braithwaite*, 141 S. Ct. 875
(2020). This change in law calls into question the overall
conclusions in *Hamilton* and *General Land Office*. It also
provides further support for the Court to consider the statute
of limitations applicable to the ESA in the same vein as other
limitations periods for other statutes, as in *In re United Mine
Workers* and *In re Bluewater*.

   Accordingly, the Court concludes that the ESA imposes a
continuing duty on the FWS to make 12-month findings for
petitioned species. Because the FWS is under a continuing
obligation to act and has not yet acted, the Center's claims
have not accrued. The Court therefore **DENIES** Defendants' Motion

to Dismiss the Center's 12-month finding claims as time-barred.[15]

## V.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Partial Dismissal. *See* ECF No. 12. The Center's claims regarding the 192 species awaiting a 12-month finding may proceed.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **March 8, 2023**

---

[15] The Court need not reach the parties' arguments as to whether the statute of limitations should be equitably tolled.