IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )  No. 1:20-cv-00573-EGS ) |
| DEBRA HAALAND, in her official capacity as Secretary of the United States Department of the Interior, et al., | ) ) ) ) ) |
| Defendants, | ) ) ) |

**STIPULATED SETTLEMENT AGREEMENT**

This Stipulated Settlement Agreement ("Agreement") is entered into by and between Plaintiff Center for Biological Diversity ("Center") and Defendants United States Fish and Wildlife Service ("Service"); Debra Haaland, in her official capacity as Secretary of the United States Department of the Interior; and Martha Williams, in her official capacity as Director of the Service, (collectively, "Defendants"), who, by and through their undersigned counsel, state as follows:

**A.  DEFINITIONS**

1. For purposes of this Agreement, the terms "ESA" or the "Act" refer to the Endangered Species Act. 16 U.S.C. §§ 1531–1544.

2. For purposes of this Agreement, the term "species" refers to the same term as defined in the ESA. 16 U.S.C. § 1532(16).

3. For purposes of this Agreement, the term "12-month finding" refers to a finding that shall be made by the Service within 12 months after receiving a petition that is found to present substantial information indicating the petitioned action may be warranted under the ESA as to

whether the petitioned action is not warranted, warranted, or warranted but precluded by pending higher-priority proposals to determine whether any species is an endangered species or a threatened species. 16 U.S.C. § 1533(b)(3)(B).

4. For the purposes of this Agreement, the term "Workplan" refers to the Service's National Domestic Listing Workplan, Fiscal Year 2024–2028 Workload, published on May 23, 2024. *See* Exhibit B.

5. For the purposes of this Agreement, the term "Complaint" refers to the Center's Complaint, filed on February 27, 2020, Dkt. 1.

6. For the purposes of this Agreement, the term "Service" refers to the U.S. Fish and Wildlife Service.

## B. RECITALS

WHEREAS, on November 20, 2019, the Center sent a letter to Defendants stating its intent to file suit under the ESA to compel the Service to complete listing and critical habitat actions for 274 species;

WHEREAS, on February 27, 2020, the Center filed its Complaint in the above-captioned action to compel the Service to complete listing and critical habitat actions by dates certain for 241 of the 274 species identified in the Center's November 20, 2019 letter;

WHEREAS, on February 22, 2022, the Court approved a settlement agreement that resolved the Center's claim regarding 1 species identified in the Complaint: Dixie Valley toad (*Anaxyrus willamsi*), *see* Dkt. 28; minute order, dated February 22, 2022;

WHEREAS, on May 4, 2022, the Court approved a settlement agreement that resolved the Center's claims with respect to 83 species identified in the Complaint, *see* Dkt. 37; minute order dated May 4, 2022;

WHEREAS, on July 28, 2023, the Court approved a settlement agreement that resolved the Center's claims with respect to 55 species identified in the Complaint, *see* Dkt. 54, Order dated July 28, 2023;

WHEREAS, beyond these settlements resolving some of the claims in the Complaint, the Service has also since completed listing and critical habitat actions for 20 other species identified in the Complaint, and the Center withdrew petitions seeking listing for a number of additional species that were subjects of the Complaint;

WHEREAS, as a result of these settlements, listing and critical habitat actions, and withdrawn petitions, 76 species remain at issue in this litigation, *see* Dkt. 71-1, Species That Remain Subject to Suit (setting forth the 76 specific species still at issue in this suit);

WHEREAS, the parties, by and through their authorized representatives, and without any admission or final adjudication of the issues of fact or law with respect to the Center's claims, have reached a settlement that they consider to be a just, fair, adequate, and equitable resolution of the disputes set forth in the Complaint with respect to the 76 species that remain at issue in this suit;

WHEREAS, the parties agree that settlement of this action in this manner is in the public interest and is an appropriate way to resolve the dispute between them with respect to these 76 species.

## C.  TERMS OF AGREEMENT

NOW, THEREFORE, the parties hereby stipulate and agree as follows:

3

1. The Service shall submit 12-month findings for the 76 species remaining in this suit, pursuant to 16 U.S.C. § 1533(b)(3)(B), to the Federal Register by the end of Fiscal Year ("FY")[1] 2029;

2. To meet the requirements of paragraph 1, the Service will address the 76 species remaining in this suit as follows: by submitting 6 12-month findings to the Federal Register in FY 2025, 20 12-month findings in FY 2026, 21 12-month findings in FY 2027; 22 12-month findings in FY 2028; and 7 12-month findings in FY 2029. If the Service completes more than the required number of findings in a given year, it may reduce the total number of species for which it completes 12-month findings by a corresponding amount in one of the subsequent years;

3. The Service agrees to meet annually with the Center to discuss significant new information about the species at issue in this suit, indicating either (a) that listing is not warranted and thus the Center can withdraw a pending petition to list such species as endangered or threatened, or (b) the species may merit a different prioritization from that reflected in the Workplan;

4. Both parties agree that making these 12-month findings will require the devotion of significant resources on the part of the Service. To that end, the Center agrees that:

    a. It will not bring suit before the start of FY 2026 (i.e., until after 10/1/2025) to enforce the ESA's statutory deadlines for any species for which the Service missed any overdue 12-month finding set forth in the Service's May 2024 Workplan with a completion date of FY 2024 or FY 2025;

---

[1] Each fiscal year ends on September 30 of the given year: e.g., FY 2025 ends on September 30, 2025.

4

    b. Beginning in FY 2026 (10/1/2025) until the conclusion of this agreement in FY 2029 (9/30/2029), it will not sue the Service for any overdue 12-month findings set forth in the May 2024 Workplan for such years until the Service has missed the Workplan date for the finding; and in any such suit it will not seek relief that will require the Service to make an overdue 12-month finding in less than a year following the date set forth in the May 2024 Workplan[2];

    c. For any species which are not addressed in the May 2024 Workplan, during the time from the adoption of this Agreement until the completion of this agreement in FY 2029 (9/30/2029), the Center will not seek relief requiring a 12-month finding to be made earlier than the end of FY 2028 (9/30/2028);

    d. However, the Center reserves the right to file suit over missed ESA statutory deadlines for no more than two species per fiscal year, not subject to the restrictions set forth in subparagraphs a–c of this paragraph, if the Center determines that the species faces an imminent risk of extinction. The Center shall confer with the Service prior to filing a suit under this subparagraph;

5. As a result of the Service's actions during the pendency of this case, the Center's withdrawal of petitions seeking listing for species at issue in this suit, this settlement agreement, and the three previous settlement agreements reached between the parties which have been adopted by this Court, *see* Dkt. Nos. 28, 37, 54, the Center's claims regarding the 241 species initially at issue in this suit have been addressed or are otherwise moot, and the parties agree that the Center

---

[2] For example, the Oregon vesper sparrow is the first species in the May 2024 Workplan with a scheduled finding in FY 2026. The Center will not sue to enforce the ESA's deadlines for this species, unless the Service does not make a finding for the Oregon vesper sparrow by 10/1/2026. If that occurs, the Center may bring suit to enforce the ESA's mandatory deadlines for the species, but will not request relief requiring the Service to make such a finding any earlier than 10/1/2027.

will voluntarily dismiss this case with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and a stipulated dismissal to such effect will be filed with this Court within seven business days of this Court adopting this Agreement, subject to the parties' request that the Court retain jurisdiction to oversee compliance with the terms of this Agreement and to resolve any motions to modify such terms as set forth in paragraph 17;

6.  With respect to Defendants, this Agreement requires only that the Service take the actions specified in paragraphs 1–3. No provision of this Agreement shall be interpreted as or constitute a commitment or requirement that Defendants take action in contravention of the ESA, the Administrative Procedure Act ("APA"), or any other law or regulation, either substantive or procedural. Nothing in this Agreement shall be construed to limit or modify the discretion accorded to the Service by the ESA, the APA, or general principles of administrative law with respect to the procedures to be followed in making any determination required herein, or as to the substance of any determination required herein. To challenge any finding issued by the Service in accordance with this Agreement, the Center will be required to file a separate action, and Defendants reserve the right to raise any applicable claims or defenses in response thereto.

7.  The Parties acknowledge that the Service has entered into this Agreement based on the Service's projection that it will have sufficient resources to fulfill the requirements of the Agreement. In entering into this Agreement, one of the Service's assumptions is that resources available to the Listing Program in each fiscal year the Agreement is in effect will not be substantially less than the FY 2024 level. If, at any time before all the requirements of this Agreement have been satisfied, the Service concludes that it will not have sufficient resources to complete the actions required by this Agreement and the actions required by other court orders or

court-approved settlement agreements, the Service may seek the Center's consent to modify this Agreement through a written stipulation filed with the Court in accordance with paragraph 8.

8. The order entering this Agreement may be modified by the Court upon good cause shown, consistent with the Federal Rules of Civil Procedure, by written stipulation between the parties filed with and approved by the Court, or upon written motion filed by one of the parties and granted by the Court. In the event that either party seeks to modify the terms of this Agreement, including the deadlines specified in paragraphs 1–2, or in the event of a dispute arising out of or relating to this Agreement, or in the event that either party believes that the other party has failed to comply with any term or condition of this Agreement, the party seeking the modification, raising the dispute, or seeking enforcement shall provide the other party with notice of the claim. The parties agree that they will meet and confer (either telephonically or in person) at the earliest possible time in a good-faith effort to resolve the claim before seeking relief from the Court. If the parties are unable to resolve the claim themselves, either party may seek relief from the Court.

9. In the event that Defendants fail to meet a deadline specified in paragraphs 1–2 and have not sought to modify it, the Center's first remedy shall be a motion to enforce the terms of this Agreement, after following the dispute resolution procedures described above. This Agreement shall not, in the first instance, be enforceable through a proceeding for contempt of court.

10. No part of this Agreement shall have precedential value in any litigation or in representations before any court or forum or in any public setting. No party shall use this Agreement or the terms herein as evidence of what does or does not constitute a reasonable timeline for making determinations regarding the listing of or designation of critical habitat for any species.

11. Nothing in this Agreement shall be construed or offered as evidence in any proceeding (other than a proceeding to enforce this Agreement) as an admission or concession of any wrongdoing, liability, or any issue of fact or law concerning the claims settled under this Agreement or any similar claims brought in the future by any other party. Except as expressly provided in this Agreement, the parties do not waive or relinquish any legal rights, claims, or defenses they may have. This Agreement is executed for the purpose of settling the Center's Complaint, and nothing herein shall be construed as precedent having preclusive effect in any other context.

12. Nothing in this Agreement shall be interpreted as, or shall constitute, a requirement that Defendants are obligated to pay any funds exceeding those available, or take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable appropriations law.

13. The parties agree that this Agreement was negotiated in good faith and it constitutes a settlement of claims disputed by the parties. By entering into this Agreement, the parties do not waive any legal rights, claims, or defenses, except as expressly stated herein. This Agreement contains all of the terms of agreement between the parties concerning the Center's Complaint and is intended to be the final and sole agreement between the parties with respect thereto. The parties agree that any prior or contemporaneous representations or understanding not explicitly contained in this written Agreement, whether written or oral, are of no further legal or equitable force or effect.

14. The undersigned representatives of each party certify that they are fully authorized by the party or parties they represent to agree to the terms and conditions of this Agreement and do hereby agree to the terms herein. Further, each party, by and through its undersigned

representative, represents and warrants that it has the legal power and authority to enter into this Agreement and bind itself to the terms and conditions contained in this Agreement.

15. The terms of this Agreement shall become effective upon entry of an order by the Court approving the Agreement.

16. The Center reserves its right to request attorneys' fees and costs from Defendants, and Defendants reserve their right to contest the Center's entitlement to recover fees and the amount of any such fees and do not waive any objection or defenses they may have to the Center's request. The parties agree that the deadline for the Center to file a potential motion for costs and attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d) shall be stayed until 180 days after the dismissal of this case, so that the parties may seek to resolve any requested attorneys' fees and costs without this Court's further involvement.

17. Notwithstanding the dismissal of this action, the parties hereby stipulate and respectfully request that the Court retain jurisdiction to oversee compliance with the terms of this Agreement and to resolve any motions to modify such terms. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

Dated: January 15, 2025                  Respectfully submitted,

*/s/ Ryan Adair Shannon*                 TODD KIM, Assistant Attorney General
RYAN ADAIR SHANNON                       S. JAY GOVINDAN, Section Chief
(D.C. Bar No. OR0007)                    MEREDITH L. FLAX, Deputy Section Chief
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211                       */s/ Davis A. Backer*
Tel: (917) 717-6407                      DAVIS A. BACKER (CO Bar No. 53502)
E-mail: rshannon@biologicaldiversity.org Trial Attorney
                                         LESLEY LAWRENCE-HAMMER
*Attorney for Plaintiff*                 Senior Trial Attorney
                                         United States Department of Justice
                                         Environment & Natural Resources Division
                                         Wildlife & Marine Resources Section
                                         999 18th St., South Terrace, Suite 370

9

Denver, Colorado 80202
Tel: (303) 844-1898 (Backer)
Tel: (303) 844-1368 (Lawrence-Hammer)
Fax: (303) 844-1350
E-mail: davis.backer@usdoj.gov
Email: Lesley.lawrence-hammer@usdoj.gov

*Attorneys for Defendants*