Camila Cossío (D.C. Bar No. OR0026)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: 971-717-6427
ccossio@biologicaldiversity.org

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>*Plaintiff*,<br><br>v.<br><br>DOUG BURGUM, in his official capacity as Secretary of the United States Department of the Interior, *et al.*,<br><br>*Defendants*. | Case No. 1:20-cv-00573-EGS<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO MODIFY STIPULATED SETTLEMENT AGREEMENT** |

## INTRODUCTION

Plaintiff, the Center for Biological Diversity ("Center"), respectfully opposes Defendants' motion to modify the terms of the parties' Stipulated Settlement Agreement ("Agreement"), which requires the U.S. Fish and Wildlife Service ("FWS") to determine whether 20 species warrant listing under the Endangered Species Act ("ESA") by submitting their 12-month findings to the Federal Register by the end of fiscal year 2026 (Sept. 30, 2026). FWS seeks to modify the parties' Agreement by extending the deadline for nine of the species by 45 additional days. Defs.' Mot. at 5-6, ECF 85. FWS's motion relies on "unanticipated" delays to justify modifying the Agreement; however, because the delays are contemplated in FWS's normal methodology for 12-month findings, FWS cannot meet the standard of equity under Federal Rule of Civil

Procedure 60(b)(5). The Center also disagrees that an additional 45 days is suitably tailored to the problem.

When this Complaint was filed, the Service faced a backlog of more than 500 species awaiting 12-month findings (decisions on whether the species warrant or do not warrant protections under the ESA). Compl. ¶ 3, ECF 1. It was against this backdrop that the Center filed this lawsuit to compel the Service to make the statutorily required findings. *Id.* Now, FWS seeks more time "to finish its review of the findings" because the "final stage in the process has taken longer than anticipated due to unforeseen delays in leadership-level review of the findings," for "Departmental leadership to finalize review of the findings," and to brief "officials unfamiliar with these species." Defs.' Mot. at 5-7, ECF 85. FWS's motion does not identify the nine species it seeks more time for, precluding the Center's ability to appropriately respond to how its members' concrete interests in each species will be harmed by the additional delay.

## I. Delays due to leadership level review are assumed in FWS's own methodology and therefore cannot be a significant change in factual conditions warranting a modification under Rule 60(b)(5).

FWS has not pointed to any "significant change in factual conditions or law" that justify modifying the Parties' Stipulated Settlement Agreement. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992). A change in the facts qualifies as significant if it makes compliance with the decree "substantially more onerous," "unworkable because of unforeseen obstacles," or "detrimental to the public interest." *Salazar v. Dist. of Columbia*, 896 F.3d 489, 492 (D.C. Cir. 2018). While the Center does not doubt that review from leadership is delaying the process, Defs.' Mot. at 5, ECF 85, relief under Rule 60(b)(5) is appropriate when the court order is no longer "equitable," as opposed to when a party finds "it is no longer convenient to live with the terms." *Rufo,* 502 U.S. at 383. As discussed below, FWS cannot meet its burden to

show that "a significant change either in factual conditions or in law" make compliance "substantially more onerous" or that "unforeseen obstacles" make the court order "unworkable." *See id.* at 384.

FWS's own methodology assumes leadership review may take longer than anticipated. For example, FWS has explained many times that once the field office assigned to the species completes a 12-month finding, the "minimum" time for review and clearance at the leadership level is three months. *See* Ex. A-8 to A-9, Gina Shultz Declaration ("Shultz Decl.") ¶¶ 27-29 (describing "HQ Review and Clearance Process of 12-month Finding" and stating that the "minimum time for policy review from the time a notice arrives in Headquarters to the time the notice is cleared for publication is three months. The team must take this into account when working on the notice and must also allow time for briefing regional leadership and senior policy officials."). This includes the review and sign off from Department of the Interior. Ex. A-9, Shultz Decl. ¶ 28 ("Following [FWS's] Director's surname, the notice will move to the Department of the Interior's Assistant Secretary for Fish and Wildlife and Parks"); *see also* Ex. B-8, Declaration of Jeff Humphrey ("Humphrey Decl.") ¶ 24 ("[t]he minimum time for policy review from the time a notice arrives in Headquarters to the time the notice is cleared for publication is three months."); Ex. C-5 to C-7, Declaration of Donald Ratcliff ("Ratcliff Decl.") ¶ 11 (the review and clearance process can take "several months"); *id.* ¶ 19 (describing the review and clearance process, including sending the final 12-month finding to Interior, and noting that at "any point in the policy-review stage, policy-level reviewers may seek input…or ask questions"); Ex. D-8, Declaration of Michael Fris ("Fris Decl.") ¶ 24 (explaining the review and clearance process as requiring a "minimum" of three months); Ex. E-9, Declaration of Lori Nordstrom ("Nordstrom Decl.") ¶ 26 (explaining that the "minimum time for policy review from

the time a notice arrives in Headquarters to the time the notice is cleared for publication is three months"); Ex. F-9, Declaration of Elizabeth Maclin for the Miami cave crayfish ("Maclin Decl. crayfish") ¶ 19 (describing the Final Rule process as requiring "multiple levels of Headquarters review").

The delay is not a "change in factual conditions," "unforeseen," or "unworkable," because FWS's process for 12-month findings anticipates that leadership review may take longer than anticipated. *See, e.g.,* Ex. D-8, Fris Decl. ¶ 24 (explaining that the 12-month finding review and clearance process builds in a "minimum" of three months for leadership review). Based on FWS's own explanations, delays may occur during the final stage of review, and it is in the agency's control to take possible delays into "account" at the outset. Ex. A-9, Shultz Decl. ¶ 29; Ex. B-8, Humphrey Decl. ¶ 24 ("the minimum time…[for clearance]…is three months" and the "team must take this account" and "must also allow time for briefing regional leadership and senior policy officials."); Ex. D-8, Fris Decl. ¶ 24 (the "team must take…into account" that the approval process takes a "minimum" of three months); Ex. E-9, Nordstrom Decl. ¶ 26 (the "team must take this into account" "and must also allow time for briefing regional leadership and senior policy officials."); *see also* Ex. G-8, Declaration of Christopher Cooley ("Cooley Decl.") ¶ 15 (describing "briefing the Regional Director and Headquarters" as "will take time"). The delays do not make compliance "substantially more onerous," and they are not "unworkable because of unforeseen obstacles" because the delays in leadership review are anticipated in FWS's 12-month finding process. Defs.' Mot. at 5, ECF 29. *See Rufo*, 502 U.S. at 384, 385 ("[M]odification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree.").

FWS explained that it is "impossible to predict and plan for…deadline litigation," ECF 61-6, Gary Frazer Declaration ("Frazer Decl.") ¶ 28, and has argued that altering dates for listing actions "would disrupt the careful balance" of the agency's workload and that "other planned, and perhaps higher priority, actions will be delayed." *Id.* Yet, the parties subsequently entered into the Agreement at issue that ensured deadline predictability for the remaining species in this case. ECF 72. However, in contrast to past statements, the agency is now asking to modify court-ordered deadlines that ensured predictability, based solely on delays that were anticipated from the get-go.

The cases that Defendants cite in support of their motion are distinguishable. In *Salazar*, the party requesting relief presented "new factual circumstances" that "did not exist at the time" the consent decree was entered, 896 F.3d at 499. Here, Defendants cannot claim leadership delays are "new" circumstances when FWS has repeatedly explained that more time may be needed (*i.e.* a delay) during the final review process and that the "team" must "account" for this from the outset. Ex. A-9, Shultz Decl. ¶ 29; Ex. B-8, Humphrey Decl. ¶ 24; Ex. D-8, Fris Decl. ¶ 24; Ex. E-9, Nordstrom Decl. ¶ 26. In *AARP v. U.S. Equal Emp. Opportunity Comm'n*, 292 F. Supp. 3d 238, 244–45 (D.D.C. 2017), the Court stated that because of disruptions to the public and new information presented by the agency, there was a "strong reason to reconsider the Court's original remedial decision." Again, here, FWS fails to present new information because the delays are contemplated from the outset. Ex. A-9, Shultz Decl. ¶ 28. And delaying these nine findings further would likely disrupt the public's ability to obtain timely science-based federal decisions.

When other courts have modified orders setting deadlines for compliance with the ESA, the asserted changes in factual circumstances have been outside of FWS's control and thus

distinguishable from the current motion, such as "unforeseen complications due to the COVID-19 pandemic," *Ctr. for Biological Diversity v. Zinke*, No. CV-15-00019-TUC-JGZ (l), 2021 U.S. Dist. LEXIS 81634, at *13 (D. Ariz. Apr. 27, 2021), or a "funding shortfall" and "impending violation of the Anti-Deficiency Act," *Ctr. for Biological Diversity v. Norton*, No. 01-CV-2101-LEG (LAB), 2003 U.S. Dist. LEXIS 31019, at *11 (S.D. Cal. Sep. 8, 2003); *Baykeeper v. U.S. Fish & Wildlife Serv.*, No. 3:25-cv-01360-LJC, 2025 U.S. Dist. LEXIS 265521, at *3–4 (N.D. Cal. Dec. 23, 2025) (same). FWS has previously explained that it has "no control" when 12-month findings are published in the Federal Register, Ex. A-9, Shultz Decl. ¶¶ 30-31, and that it has no control over the review process under the Office of Management and Budget given that OMB is a separate agency. *Id.* But that is not the case here, where the 12-month finding delays are specific to "Service and Departmental leadership" review. Defs.' Mot. at 7, ECF 85. Delays from leadership presumably include the Secretary of the Interior, which has statutorily delegated administration of the ESA specifically to FWS. 50 C.F.R. § 402.01(b). *See* Defs.' Answer ¶ 18, ECF 59 (admitting this allegation). Moreover, FWS has explained that it has "no control" over other parts of the process, underscoring that the internal, leadership-level review process is within its control and that delays are anticipated. Ex. A-9, Shultz Decl. ¶¶ 30 ("[OMB's review] only begins after the Department of the Interior review is complete, OIRA may seek interagency review of any critical habitat designation. The Service has no control over whether OIRA will designate any particular regulation as a significant regulatory action.").

It is FWS's responsibility to account for potential delays at the outset, and it cannot now argue that predictable red tape warrants more time. Unfortunately, FWS did not identify the nine species it is seeking more time for, precluding the Center's ability to appropriately explain how

its members concrete aesthetic, recreational or professional interests will be harmed by the delay in publishing the 12-month findings.

**II. A 45-day extension is not suitably tailored.**

It is irrelevant that the parties' Agreement was entered "on the cusp of a change in political Administration." Defs' Mot. at 6, ECF 85. FWS has over fifty years of experience listing species under the ESA, working under many different administrations, and frequently negotiates court-ordered deadlines that contemplate that leadership level review and clearance may take longer than anticipated. The nine species waiting for decisions should not be forced to wait longer because FWS did not account for anticipated delays.

If the Court disagrees with Plaintiff, a 45-day extension is still not suitably tailored to resolve the problem. *See Rufo*, 502 U.S. at 391 ("Once a court has determined that changed circumstances warrant a modification in a consent decree, the focus should be on whether the proposed modification is tailored to resolve the problems created by the change in circumstances."). Defendants explain that "all but two of the draft findings [have progressed] through Service review." Defs' Mot. at 7, ECF 85. Defendants argue that FWS requires 45 more days to "ensure Service and Departmental leadership have adequate time to review and communicate with regional staff to ensure the various findings have incorporated the latest information on the species and reflects the most informed decision that will withstand scientific and judicial review" and to "fully brief leadership-level officials unfamiliar with the species." *Id.* But clearing the 12-month finding for publication should not take an additional 45 days. Because Department of Interior is not involved in drafting 12-month findings, the science for seven of the nine finding appears to be completed—that is, every scientific step in FWS's process appears complete. Defs' Mot. at 7, ECF 85. Thus, the agency does not need 45 more days. Moreover,

leadership had knowledge of this matter years ago, considering the Center filed this lawsuit over six years ago. Defendants received notice of this litigation on November 20, 2019. Compl. ¶ 9, ECF 1. If there are now those in leadership claiming to be "unfamiliar" with the species shortly before the Parties' Agreement's deadline was due, an additional 45-days will not incentivize leadership to meet their deadline despite knowledge of the many species waiting for decisions.

Moreover, the ESA does not require perfection, recognizing the vulnerability of species on the brink, the ESA requires FWS to consider the best "available" science. Therefore, it is not in the "interest of the ESA and these species" to ensure that FWS has more time "to properly and fully consider the listing determination," especially given that seven of the nine 12-month findings are complete. Although a 45-day extension may appear modest, every additional day that these species are forced to continue waiting for a decision increases the risk that the species will be lost forever. Therefore, should the Court grant Defendants' motion, the Center respectfully requests that FWS receive no more than 10 additional days to finalize the seven that are complete and no more than 20 days to publish the remaining two 12-month findings.

## CONCLUSION

For these reasons, the Center respectfully requests that this Court deny Defendants' motion and order Defendants to submit the nine 12-month findings to the Office of the Federal Register within five days of ruling on Defendants' motion. Should the Court grant Defendants' motion, the Center respectfully requests that FWS receive no more than 10 additional days from the Order of this Court to submit the seven completed 12-month findings to the Federal Register and no more than 20 additional days from the Order of this Court to submit the remaining two 12-month findings to the Federal Register.

Dated: October 9, 2026 Respectfully submitted,

*s/ Camila Cossío*
Camila Cossío (D.C. Bar No. OR0026)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: 971-717-6427
ccossio@biologicaldiversity.org

*Attorney for Plaintiff*