ADAM R.F. GUSTAFSON, Principal Deputy Assistant Attorney General
MEREDITH L. FLAX, Deputy Section Chief
NICOLE M. SMITH, Assistant Section Chief
DAVIS A. BACKER, Senior Trial Attorney (CO Bar No. 53502)
United States Department of Justice
Energy & Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street, North Terrace, Suite 600
Denver, CO 80202
Phone: (202) 305-5469
Fax: (202) 305-0275
E-mail: davis.backer@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY;<br><br>Plaintiff,<br><br>v.<br><br>DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior,<br><br>Defendants. | ) | Case No. 1:20-CV-00573-EGS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO MODIFY STIPULATED SETTLEMENT AGREEMENT FOR AN EXTENSION OF TIME** |

The Court should grant Defendants' request for a modest extension of the U.S. Fish and Wildlife Service's ("Service") deadline to submit nine determinations under Section 4(b)(3)(B) of the Endangered Species Act (Act) by 45 days—from September 30, 2026, to November 14, 2026— to the Office of the Federal Register to account for unanticipated delays during internal review. *See* October 2, 2026 Declaration of Elizabeth Maclin (Dkt. No. 85-1) ¶¶ 4, 6, 7. Contrary to Plaintiff's assertions, *see* Dkt. No. 86 ("Pl's. Resp."), the Service's requested extension is warranted under Rule 60(b)(5) and is narrowly tailored to account for unforeseen leadership-

level delays in reviewing these 12-month findings. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992); *see also AARP v. U.S. EEOC*, 292 F. Supp. 3d 238, 244–45 (D.D.C. 2017). Plaintiff fails to rebut the Service's showing that the requested extension is justified. As demonstrated in Defendants' opening brief and further below, the Court should extend the Service's deadline to November 14, 2026.

## ARGUMENT

### I. Unanticipated delays in leadership-level review warrant modification of the stipulated settlement agreement under Federal Rule of Civil Procedure 60(b)(5).

The unexpected and unforeseen delays necessitating a 45-day extension of the Service's deadline to submit the challenged 12-month findings are precisely the type of "significant change in factual circumstances" contemplated by Rule 60(b)(5). Rule 60(b)(5) preserves a district court's equitable authority to modify prospective relief when changed circumstances render its original terms unworkable. *Pigford v. Veneman*, 292 F.3d 918, 925 (D.C. Cir. 2002). The D.C Circuit has advised that Rule 60(b)(5) embodies a "flexible" standard, particularly where a judgment or consent decree governs prospective conduct. *Salazar v. District of Columbia*, 896 F.3d 489, 497 (D.C. Cir. 2018); *see also Am. Council of the Blind v. Mnuchin*, 878 F.3d 360, 366 (D.C. Cir. 2017). Once the party seeking relief establishes that a "significant change in circumstances warrants revision of the decree," *Rufo*, 502 U.S. at 383, "a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." *Horne v. Flores*, 557 U.S. 433, 447 (2009).

Disregarding the primary equitable functions of Rule 60(b)(5), Plaintiff submits that the unanticipated delays are part of "the internal, leadership-level review process [] within its control and that delays are anticipated," Pl's. Resp. at 6, and thus cannot form the basis for the Service's requested 45-day extension. Plaintiff is wrong on several counts. First, the Service's internal

review process for 12-month findings is not discretionary or "self-imposed." *See* 16 U.S.C. § 1533(b)(3)(B) (requiring the Secretary of the Interior to make a 12-month finding on a petition presenting substantial information within 12 months of receiving the petition). Rather, the Service, as an Executive Branch agency, is bound by the decisions of its Departmental leadership; it is not empowered to unilaterally determine that the agency will not participate in this internal review process. Additionally, this review process is necessary to allow the agency sufficient time to review findings, enhance their legal defensibility, and ensure consistent application of law and policy guidance. *See, e.g.*, Dkt. 85-1 at ¶ 5 (noting "the Service has been working to identify, review, and incorporate the best scientific and commercial data available on these species to make the most informed decision it can as to the relevant 12-month findings"). On this basis, courts routinely defer to an agency's determination of its own timeline. *See, e.g.*, *United Steelworkers of Am. v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986) (holding judicial imposition of overly hasty timetable on agency would ill serve the public interest); *Am. Nurses Ass'n v. Jackson*, 2010 WL 1506913, at *2 (D.D.C. Apr. 15, 2010) ("If EPA needs more time to get it right, it can seek more time."); *AARP v. U.S. EEOC*, 292 F. Supp. 3d 238, 244 (D.D.C. 2017) (according deference to agency upon emergence of "new information regarding its rulemaking timeline"); *Me. Ass'n of Handicapped Persons v. Dole*, 623 F. Supp. 920, 926 (D. Me. 1985) (recognizing "the need to implement clear and effective regulations capable of withstanding the scrutiny of challenges following enactment").

Second, the delay in political leadership-level review was not "assumed" in the Service's own clearance process. *Contra* Pl's. Resp. at 2-3. Rather, this delay represents an *independent* and *unanticipated* disruption in the Service's final approval of these 12-month findings, which caused a subsequent backlog in the processing timeline. Dkt. No. 85-1 at ¶¶ 6, 7 (noting the

finding is now at Service Headquarters and additional time is required for Departmental review). Internal review involves multiple rounds of inquiry from Service personnel during regional and headquarters review, and then again during review by officials in the Department of the Interior. *Id.* Due to unforeseen events here, this process took more time than anticipated thus explaining the Service's stated need for a 45-day extension to submit the final 12-month findings to the *Federal Register*.

For the same reasons, these delays were not foreseeable to the Service, as Plaintiffs allege. *Contra* Pl's. Resp. at 6. Although internal agency review may be an anticipated and necessary part of the 12-month finding publication process, leadership-level *delays* affecting the timeline for this process are not foreseeable. Dkt. No. 85-1 at ¶¶ 6, 7. "Litigants are not required to anticipate every exigency that could conceivably arise during the life of a consent decree." *Rufo*, 502 U.S. at 385. Here, leadership-level delays in September 2026 were not foreseeable to the Service in January 2025 when it entered into the settlement agreement. Thus, while the Service did in fact "allow time for briefing regional leadership and senior policy officials," Pl's. Resp. at 3-4; *see also* Dkt. No. 72-1 at ¶ 2 (stipulating that the Service shall submit 20 12-month findings in FY 2026), it could not possibly have allotted time for *delays* in those reviews.

The timing of when Defendants contacted Plaintiff—days before the September 30, 2026 deadline—and the fact that the draft findings are currently undergoing Departmental review, only underscore the unanticipated nature of Defendants' request. *See* Dkt. No. 85 at 2 (noting that Counsel for Defendants contacted Plaintiff as soon as it became clear that the Service required an extension of the finding deadlines, and "[a]s a result, Defendants intend to move for a 45-day extension of their current deadline, or until November 14, 2026."); Dkt. No. 84 at ¶ 2. Nor was it apparent in January 2025 that new Departmental leadership unfamiliar with these

species and listing determinations would require more time near the end of the review process. Dkt. No. 85-1 at ¶ 6. The precise length of time required for leadership review is unpredictable, and such unanticipated delays in the review process constitute the same "significant change . . . in factual conditions" contemplated by Rule 60(b)(5). *Horne*, 557 U.S. at 447; s*ee Rufo*, 502 U.S. at 385 (modification of a consent decree "may be warranted when changed factual conditions make compliance with the decree substantially more onerous" or "unworkable because of unforeseen obstacles").[1]

Third, these delays were not "based solely on delays that were anticipated from the get-go," *contra* Pl's. Resp. at 5, but were circumstances distinctly outside of the Service's control. In this way, many of the cases Plaintiff cites are directly on point and analogous to the changed conditions here. For instance, in *Ctr. for Biological Diversity v. Zinke*, the court held that the impact of the COVID-19 pandemic on the Service's compliance with a remand deadline—including "reduced staff hours, delays in internal processes, delays in communication with cooperating agencies, and the redirecting of resources and staff labor"—as well as the Service's decision to develop a supplemental environmental impact statement, constituted changed factual conditions warranting equitable modification of the deadline. 2021 WL 1821641, at *3. So too, here: unanticipated interruptions in the review process triggered subsequent delays in internal processes and communication between Service and Departmental staff and leadership. Dkt. No. 85-1 at ¶¶ 6-7.

[1] And even foreseeability of changed circumstances may not necessarily defeat a request for modification under Rule 60(b)(5). *See Rufo*, 502 at 395 (O'Connor, J., concurring) (noting that under the majority opinion, modification may be "equitable" under Rule 60(b)(5) even if the changed circumstance is foreseeable); *Ctr. for Biological Diversity*, 2021 WL 1821641, at *3 ("Although the potential need for a [supplemental environmental impact statement] was foreseeable at the time the Court imposed its final judgment, the Court did not take it into account in setting the deadline.").

Such delays affecting the Service's timeline, but attributable to circumstances outside of its control, justify the Service's requested relief. *See Ctr. for Biological Diversity v. Norton*, No. 01CV2101IEGLAB, 2003 WL 22225620, at *4 (S.D. Cal. Sept. 9, 2003) ("FWS's current lack of funding in this fiscal year . . . justify modification of deadlines into the next fiscal year."); *Concerned Friends of the Winema v. U.S. Forest Serv.*, No. 1:14-CV-00737-CL, 2018 WL 7254704, at *4 (D. Or. Dec. 10, 2018), *report and recommendation adopted*, No. 1:14-CV-00737-CL, 2019 WL 982383 (D. Or. Feb. 28, 2019) (new agency decision documents were "significantly changed circumstances" justifying relief under Rule 60(b)(5)); *Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, No. 3:16-cv-06040-WHA, at *3 (N.D. Cal. May 17, 2019) (delays attributed to the 2025 lapse in appropriations were an "unforeseen obstacle" that "truncated [the Service's] already compressed time allotted for complying with" a court-ordered deadline).[2]

And, contrary to Plaintiff's assertions, *see* Pl's. Resp. at 2-3, the Service has provided more than sufficient evidence demonstrating that compliance with the existing deadline would be "substantially more onerous" and "unworkable." *See, e.g.*, Dkt. No. 85-1 at ¶¶ 5-7 (noting unanticipated delays in leadership-level review delayed the finding's arrival at Service Headquarters, requiring additional time for Departmental review, briefing of officials, communication between regional staff and Department leadership, and possible modifications to

[2] Plaintiff cites *San Francisco Baykeeper v. United States Fish & Wildlife Serv.* for the proposition that the Service's "lengthy review process" is "self-imposed" and therefore cannot form the basis for relief under 60(b)(5). Pl.'s Resp. at 6 (citing No. 25-CV-01360-LJC, 2025 WL 2528687, at *1 (N.D. Cal. Sept. 3, 2025)). There, however, the Service requested "at least twenty-four to thirty-five months, or potentially more" to issue a 12-month finding, with significant time built in for anticipated review at Headquarters. *Id.* at 3. Here, by contrast, the Service did not anticipate such unexpected delays in leadership-level review and is requesting only an extra 45 days to allow for that final review.

any 12-month findings). These facts are sufficient to justify relief under Rule 60(b)(5). *See, e.g.*, *San Francisco Baykeeper v. United States Fish & Wildlife Serv.*, No. 23-CV-06601-LB, 2024 WL 1485858, at *5 (N.D. Cal. Apr. 5, 2024) (granting Service's proposed deadline where "Service has offered specific facts showing why the process is taking time at the regional level and describes a process at headquarters that is needed"); *Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, No. 3:16-cv-06040-WHA (N.D. Cal. May 17, 2019) (crediting the Service's description of its interrupted review timeline and applying the Ninth Circuit's "flexible standard" to modify deadline under Rule 60(b)(5)); *Ctr. for Biological Diversity & Cal. Native Plant Soc'y v. Norton*, 212 F. Supp. 2d 1217, 1226 (S.D. Cal. 2002), *modified*, No. 01CV2101IEGLAB, 2003 WL 22225620 (S.D. Cal. Sept. 9, 2003) (finding reasonable the Service's description of its anticipated reconsideration timeline); *cf. NLRB v. Harris Teeter Supermarkets*, 215 F.3d 32, 36 (D.C. Cir. 2000) (denying requested modification of consent decree where defendants "completely fail[ed] to demonstrate" "unforeseen obstacles which make compliance with the consent decree unworkable").[3]

## II. The Service's modest 45-day extension is suitably tailored to the changed circumstances.

Inexplicably, Plaintiff argues that the 45 days requested by the Service to complete review of the 12-month findings and submit them to the *Federal Register* "is not suitably tailored." Pl's. Resp. at 7. But Plaintiff largely ignores the evidence proffered to support Defendants' modest request. Dkt. No. 85-1 at ¶¶ 5-7 (noting unanticipated delays and describing the minimal steps needed to complete review). Instead, Plaintiff asserts that "every additional

[3] In *Harris Teeter Supermarkets*, the court found unpersuasive defendant's claim that the "stigma" attaching to the consent decree in question made continued compliance unworkable or detrimental to the public interest. 215 F.3d at 36-37.

day that these species are forced to continue waiting for a decision increases the risk that the species will be lost forever." Pl's. Resp. at 8.

And it goes further, arguing that "a 45-day extension is still not suitably tailored to resolve" what it identifies as the "problem": "clearing the 12-month finding[s] for publication" with leadership-level officials. Pl's. Resp. at 7. But the Service is not requesting relief to solve any perceived "problem" with the Service's administration of the ESA or its review process; it is requesting 45 days to account for *specific, unanticipated delays* in leadership-level review of these 12-month findings. Contrary to Plaintiff's assertions, 45 days is a reasonable and necessary extension to accommodate for the unforeseen review delays, during which the draft finding can be finalized and prepared for submission to the *Federal Register*. Also, Plaintiff claims that "leadership had knowledge of this matter years ago, considering the Center filed this lawsuit over six years ago." Pl's. Resp. at 8. While Plaintiff did file suit during the first Trump Administration, the current second Trump Administration does not have the same leadership from the prior Administration, so the additional 45 days is necessary for "briefing those in leadership positions unfamiliar with these species, the 12-month finding process, and the January 15, 2025 settlement to which these listing determinations are subject." Maclin Decl. ¶ 6.

"[S]imple common sense require[s] the court to give significant weight to the views of the government officials who must implement any modification." *Rufo*, 502 U.S. at 393 n.14. Accordingly, "a certain amount of deference is properly afforded any governmental agency in making the determination of whether a proposed modification is appropriate." *Ctr. for Biological Diversity*, 2003 WL 22225620, at *2 n.1. Having established that modification of the Service's September 30, 2026 deadline is warranted, the Service must be afforded such deference in identifying the need for 45 additional days to issue the remaining 12-month findings here.

**CONCLUSION**

In sum, the Service is close to finalizing the 12-month findings for nine species, out of 20, that were originally due to be submitted to the Office of the Federal Register by September 30, 2026. Defendants respectfully request a modest extension of the current deadline until November 14, 2026. If the Court is inclined to deny the requested extension, Defendants do not object to Plaintiff's suggested deadline of "no more than 10 additional days to finalize the seven that are complete and no more than 20 days to publish the remaining two 12-month findings." Pl's. Resp. at 8.

Dated: October 16, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
MEREDITH L. FLAX, Deputy Section Chief
NICOLE M. SMITH, Assistant Section Chief

*<u>/s/ Davis A. Backer</u>*
DAVIS A. BACKER
Senior Trial Attorney (CO Bar No. 53502)
United States Department of Justice
Energy & Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street, North Terrace, Suite 600
Denver, Colorado 80202
Tel: (202) 305-5469
Fax: (202) 305-0275
Email: davis.backer@usdoj.gov

***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

*/s/ Davis A. Backer*
DAVIS A. BACKER
Senior Trial Attorney (CO Bar No. 53502)
United States Department of Justice
Energy & Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street, North Terrace, Suite 600
Denver, Colorado 80202
Tel: (202) 305-5469
Fax: (202) 305-0275
Email: davis.backer@usdoj.gov

***Attorney for Defendants***